599 A.2d 279

**James MAKRIS, Petitioner,**

v.

**BUREAU OF PROFESSIONAL AND OCCUPATIONAL AFFAIRS, State Board of Psychology, Respondents.**

Commonwealth Court of Pennsylvania.

Submitted Sept. 10, 1991.

Decided Nov. 14, 1991.

458

William Butler, IV, for petitioner.

Jackie Wiest Lutz, Counsel for State Bd. of Psychology, for respondents.

Before PALLADINO and McGINLEY, JJ., and SILVESTRI, Senior Judge.

McGINLEY, Judge.

James Makris (Makris) appeals from an adjudication and order of the State Board of Psychology (Board) entered November 20, 1990, which found that he had committed two violations of the Professional Psychologists Practice Act (Act).[1] We affirm.

It is undisputed that from 1984 to 1990 Makris and his wife operated the Good Neighbor Center (Center) as a massage therapy center. At a hearing before the Board, Mrs. Paula B. (Mrs. B.) testified that she went to the Center to receive massage therapy for the treatment of migraine headaches in November, 1988. Notes of Testimony, June 12, 1990 (N.T.) at 19. Mrs. B. testified that during this initial visit Makris informed her that he had a degree in psychology, that he had counseled people in the past, and

1. Act of March 23, 1972, P.L. 136, No. 52, *as amended,* 63 P.S. §§ 1201–1218.

that she could come to him if she needed counseling. N.T. at 21. Mrs. B. stated that she returned to the Center one additional time for the treatment of migraine headaches in December, 1988, at which time Makris told her that her headaches were cured. N.T. at 22. Mrs. B. testified that she subsequently decided to consult Makris about her feelings of depression, and arranged a counseling session with him after calling him to verify that he did indeed have a psychology degree and experience in counseling. N.T. at 23. Starting in January, 1989, Mrs. B. returned to Makris for four sessions of counseling, each of which she paid for, either by cash or check. N.T. at 51.

The Board found that Makris violated the Act by offering and attempting to practice psychology on Mrs. B. through the provision of counseling to her without a license under the Act, and by holding himself out to have a degree in psychology in conjunction with the provision of counseling to Mrs. B.[2] The Board ordered Makris to immediately cease and desist from the unlawful practice of psychology and to pay a civil penalty for each violation of the Act in the total amount of $2,000 pursuant to its authority under Section 11 of the Act, 63 P.S. § 1211.

Our review of agency adjudications is limited to a determination of whether constitutional rights have been violated, whether an error of law has been committed, and whether necessary findings of fact are supported by substantial evidence. 2 Pa.C.S. § 704; *Estate of McGovern v. State Employees' Retirement Board*, 512 Pa. 377, 517 A.2d 523 (1986). Makris contends that the Board's findings were not based on substantial evidence, that he was exempted from the provisions of the Act by virtue of his status as a practitioner of the healing arts, that the Board erred in refusing to admit a release purportedly signed by Mrs. B.

---

2. Section 3 of the Act, 63 P.S. § 1203, provides in relevant part:
 It shall be unlawful for any person to engage in the practice of psychology or to offer or attempt to do so or to hold himself out to the public by any title or description of services incorporating the words 'psychological,' 'psychologist' or 'psychology' unless he shall first have obtained a license pursuant to this act....

into evidence, and that the procedures followed by the Board were in violation of his due process rights.

## Substantial Evidence

Makris argues that the Board's findings and determination that Makris offered and attempted to practice psychology on Mrs. B. and falsely held himself out to have a degree in psychology are not supported by substantial evidence. Makris states that 36 out of the 46 findings of fact are based solely on the testimony of Mrs. B., and that the four findings of fact that are based on Makris' testimony are taken out of context.

■ It is logical to presume that professionals sitting on an administrative board charged with regulating a profession will draw upon their special expertise in the determinations they are called upon to make. *Kundrat v. State Dental Council and Examining Board,* 67 Pa.Commonwealth Ct. 341, 447 A.2d 355 (1982). The Board's membership includes six licensed psychologists, as well as the Commissioner of Professional and Occupational Affairs and two representatives of the public at large. Section 3.1(a) of the Act, 63 P.S. § 1203.1(a). Mrs. B. testified that Makris asked her questions about her fears and personal life, N.T. 26, and gave her advice on techniques to cope with her feelings. N.T. at 35. Given this testimony, we will not disturb the determination of the Board that such advice amounted to counseling.

■ The testimony of Mrs. B. also supports the Board's conclusion that Makris held himself out as having a degree in psychology in conjunction with the provision of counseling. Although Makris' testimony conflicted with Mrs. B.'s on some points, a finding made by an administrative agency is not unsupported by competent and credible evidence merely because some evidence is introduced which conflicts with the agency's finding. *Rabinowitz v. Unemployment Compensation Board of Review,* 15 Pa.Commonwealth Ct. 51, 324 A.2d 825 (1974). Mrs. B. testified that Makris told

her that he had a degree in psychology and counseling experience, which she interpreted as meaning that he was qualified to perform psychological counseling. N.T. at 60. Additionally, Makris testified at the hearing that he was aware that Mrs. B. misunderstood his representations to her about his qualifications. N.T. at 88. When the prosecuting attorney asked him what he had done to make Mrs. B. aware that he was not a psychologist, Makris admitted that he told Mrs. B. that he had thirty-three credits in psychology, and he relied only upon her "common sense" to know that he, therefore, did not complete the requirements for a degree in psychology. N.T. at 70. Makris stated that he found that in daily life he had to exaggerate the truth in some instances and that he may have used the word "psychology" in describing himself, not his services, to Mrs. B. N.T. at 87–88.

Makris also contends that the Board failed to resolve evidentiary conflicts, and ignored issues, including whether the "advice" he gave Mrs. B. was given in the course of their romantic relationship, rather than in an attempt to provide psychological counseling, and whether the exaggeration of his educational background was to impress her in order to further his romantic intentions. Makris contends that his "admission" that he tried to help Mrs. B. with her feelings as part of his job, N.T. at 93, was really an attempt to discover whether stress was responsible for her headaches.

It is not the function of this court to judge the weight and credibility of the evidence given before an administrative agency. *Kundrat,* 67 Pa.Commonwealth Ct. at 348, 447 A.2d at 359. The findings of the Board as they relate to Makris' allegations do not indicate that the Board failed to resolve evidentiary conflicts between the testimony of Mrs. B. and Makris, but rather that the Board resolved credibility in favor of Mrs. B. An administrative agency is not required to address each and every allegation of a party in its findings, nor is it required to explain why certain testimony has been rejected. *Roth v. Workmen's Compen-*

*sation Appeal Board (Armstrong World Industries),* 128 Pa.Commonwealth Ct. 1, 562 A.2d 950 (1989).

Makris also contends that the record does not support the Board's conclusion that he violated the Act by offering psychological services for remuneration, and that the record reveals that Mrs. B. received head massages during at least two of her so-called counseling sessions, and that Mrs. B. paid the same $20 fee for the so-called counseling sessions as she did for the first two sessions, which both parties agree were strictly massage sessions.

 Section 2 of the Act, 63 P.S. § 1202, relevantly provides:

> 'Practice of psychology' means offering to render or rendering ... for remuneration any service involving the following:
>
> (i) The application of established principles of learning, motivation, thinking and emotional relationships and forms of evaluation, group relations and behavior adjustment. The application of said principles includes but is not restricted to, counseling and the use of psychological methods with persons or groups with adjustment problems in the areas of work, family, school, and personal relationships....

The testimony of Mrs. B., which the Board chose to accept, establishes that she paid Makris, at least in part, for services described in the Act. There is no requirement in the Act that the receipt of remuneration be exclusively for the provision of psychological services.

### Exemption for Practitioners of the Healing Arts

Section 3 of the Act, 63 P.S. § 1203, provides that "[p]ersons *licensed* to practice any of the healing arts in this Commonwealth shall be exempt from the provisions of this Act." (Emphasis added.) While he concedes that there is no licensing requirement for massage therapists, Makris contends that he is a practitioner of the healing arts and is therefore exempt from the sanctions of the Act.

 We note that Makris did not raise this argument before the Board but contended that he counseled Mrs. B. and others as a pastoral counselor. N.T. at 83. *See also* Answer of Respondent James Makris to Factual Allegations and Order to Show Cause of April 13, 1990, dated May 7, 1990, at 2. Makris is therefore barred from making the argument that he is exempt under another provision of the Act.[3] However, even if we were to reach the merits Makris would fail. When the words of a statute are clear, the letter is not to be disregarded under the pretext of pursuing the spirit. *Schneck v. City of Philadelphia,* 34 Pa.Commonwealth Ct. 96, 383 A.2d 227 (1978). Quite simply, only persons licensed to practice the healing arts in the Commonwealth are exempt from the provisions of the Act.

### Admission of Exhibit R-1

During the course of the hearing, Makris offered as evidence a form initialled "P.B." (Mrs. B.'s initials) which stated that Makris was not a medical doctor, but a massage therapist. When questioned, Mrs. B. denied signing the form. N.T. at 41. The Board refused to admit the form into evidence.

 Makris contends that his testimony that he had all of his patients sign the same form establishes that the Board erred by not admitting the form as a business record. The admission of business records is governed by the Uniform Business Records as Evidence Act, 42 Pa.C.S. § 6108, which provides that a record of an act, condition or event is competent evidence if the custodian or other qualified witness testifies to its identity and the mode of preparation, and if it was made in the regular course of business at or near the time of the act, and if, in the opinion of the tribunal, the sources of information, method and time of preparation were such as to justify its admission. At the

3. The review of quasijudicial orders shall be heard on the record, and no question shall be considered by the court which was not raised before the government unit, with the exception of certain types of questions which are not relevant here. Pa.R.A.P. 1551.

hearing, Makris testified that Mrs. B. signed the form, and that he had "everybody" sign a similar form. N.T. at 71. Makris' testimony stood alone on this point, as his wife, Kathleen Gail Makris, could not remember seeing Mrs. B. sign the form. N.T. at 174. Additionally, Makris testified that he was unable to locate the form at the time his answer was filed because he had hidden it, and many different spots had to be searched before it was discovered. N.T. at 116. In light of the circumstances surrounding the form and Makris' conduct, it was not an abuse of discretion for the Board to refuse to admit the form as a business record, particularly where Mrs. B. unequivocally denied that the handwritten initials were in her handwriting or made by her. Mrs. B. described the handwritten initials as a "lousy forgery." N.T. at 42.

Makris also argues that the form should have been admitted because the Board admitted copies of Mrs. B.'s signed checks and a letter she wrote to Makris, which provided samples which corroborate his testimony that Mrs. B.'s initials were on the release form. Comparisons of genuine signatures with allegedly spurious signatures are normally a question for the trier of fact. *Groff v. Groff*, 209 Pa. 603, 59 A. 65 (1904). The Pennsylvania Rules of Evidence provide that where there is a question as to the authenticity of a writing, the opinion of a person acquainted with the handwriting of the supposed writer or the opinion of a handwriting expert is deemed to be relevant. 42 Pa.C.S. § 6111. Makris made no attempt to introduce any opinion testimony comparing the items to authenticate the initials on the form. We conclude that it was not an abuse of discretion for the Board to decline to make its own comparison of the signatures.

## The Board's Administrative Procedures

Finally, Makris maintains that four irregularities occurred in the conduct of his case that infringed upon his rights to due process before the Board. First, Makris states that an appearance of impropriety was created by the

fact that the prosecuting attorney and the Board's counsel are both employed by the Bureau of Professional and Occupational Affairs, and both were present at the Board meeting of November 19, 1990, when the Board adopted its adjudication and order.

As a general rule, where a tribunal supervises an investigation and is also responsible for adjudicating the matter after a formal adversarial hearing, the tribunal's decision is not per se biased, provided there is an adequate separation between the prosecutorial and adjudicatory functions. *Oppenheim v. Department of State, Bureau of Professional and Occupational Affairs*, 74 Pa.Commonwealth Ct. 200, 214, 459 A.2d 1308, 1316 (1983). The test to determine if there has been an improper comingling is whether the functions performed are adequately separated so there is no *actual* prejudice. *Board of Pensions and Retirement v. Schwartz*, 97 Pa.Commonwealth Ct. 539, 510 A.2d 835 (1986). Makris does not allege that he suffered any actual prejudice from the conduct of the prosecuting attorney, the Board's counsel, or the Board. Merely complaining that the prosecuting attorney and the Board's counsel were both employed by the Bureau, and both present at the Board meeting of November 19, 1990, where the Board adopted the Adjudication and Order is insufficient to establish any impropriety.

Secondly, Makris alleges a comingling of prosecutorial and adjudicatory functions occurred as a result of the actions of George L. Shevlin, Commissioner of the Bureau of Professional and Occupational Affairs (Commissioner Shevlin). Makris asserts that by signing the order to show cause that commenced the proceedings against Makris, then serving as a member of the Board that adjudicated the matter, Commissioner Shevlin allowed an appearance of impropriety to permeate the proceedings. An administrative tribunal must be unbiased, and must avoid even the appearance of bias to ensure that constitutional rights are adequately protected. *Dayoub v. State Dental Council and Examining Board*, 70 Pa.Commonwealth Ct. 621, 625,

453 A.2d 751, 753 (1982). However, comingling or bias is not established because the agency or one of its members performs more than one role in the process. *Shah v. State Board of Medicine,* 139 Pa.Commonwealth Ct. 94, 589 A.2d 783 (1991).

In *Shah,* we concluded that the Vice–Chairman of the State Board of Medicine had not acted improperly by imposing an immediate temporary suspension of a physician's license prior to the license revocation hearing. The court stated that the Vice–Chairman's actions did not indicate bias because findings on the issue of the immediate temporary suspension were based upon different standards and for different purposes than the findings on the permanent revocation. *Id.,* 139 Pa.Commonwealth Ct. at 112–113, 589 A.2d at 793. The gathering of information by the issuance of an order to show cause is a distinctly different function from making a final adjudication that determines whether a violation has occured, and whether discipline is appropriate.

■ Third, Makris notes that there is a discrepancy in the Board's order. The order states that it was adopted "by majority vote", while the minutes of the Board meeting where the order was adopted reveal that the order was adopted unanimously. Any discrepancy between the order and the minutes is harmless as a majority of the Board is all that is required to carry the vote.

■ Finally, Makris takes issue with the fact that two of the Board members present for the vote were absent at his hearing, and one of the Board members present for the hearing was absent at the vote. This does not require that the order of the Board be overturned. Again, there is no requirement that a vote of the Board be unanimous. Also, there is no requirement that the members of an administrative body who participate in the ultimate decision aurally receive evidence so long as they have reviewed the testimony. *McCarl v. State Board of Nurse Examiners,* 39 Pa.Commonwealth Ct. 628, 396 A.2d 866 (1979).

The order of the Board is affirmed.

## ORDER

AND NOW, THIS 14TH DAY OF NOVEMBER, 1991, the order of the Bureau of Professional and Occupational Affairs, State Board of Psychology in the above-captioned matter is hereby affirmed.