750 A.2d 835

**Stephen B. BATOFF, PH.D., Appellee,**

v.

**STATE BOARD OF PSYCHOLOGY, Appellant.**

Supreme Court of Pennsylvania.

Argued Nov. 16, 1999.

Decided May 18, 2000.

Paul A. Tufano, Office of General Counsel, Steven V. Turner, Chief Counsel, Gerard M. Mackarevich, Deputy Chief Counsel, Jackie Wiest Lutz, Dept. of State, for State Bd. of Psychology.

David S. Dessen, Dessen, Moses and Sheinoff, Philadelphia, for Dr. Batoff.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

NIGRO, Justice.

At issue is whether the Commonwealth Court properly overturned the State Board of Psychology's (Psychology Board's) imposition of disciplinary measures against its licensee, Stephen B. Batoff (Batoff). For reasons stated below, we find that the decision of the Psychology Board was proper and that in reversing the Psychology Board, the Commonwealth Court exceeded its scope of review. We therefore reverse the

Commonwealth Court and reinstate the decision of the Psychology Board.

In January 1991, the Psychology Board issued an order to show cause against Batoff, citing thirty-three violations of the Psychologists License Act (License Act),[1] the Professional Psychological Practice Act (Practice Act)[2] and the Psychology Board's regulations, particularly Ethical Principle 2.[3] The violations centered around multiple counts of two recurring breaches of Batoff's professional duty between 1983 and 1991: first, that he misrepresented his degree and qualifications on his letterhead and in his testimony during insurance litigation[4] and second, that he overstepped the boundaries of his competence in providing treatment to the insureds. The charges arose from insurance claims submitted by Batoff to State Farm Insurance Company (State Farm) requesting payment for treatment of forty-four different persons, each of whom was insured by a State Farm automobile policy. In each case, the insured had been involved in an auto accident and claimed psychological injury derived from that event. For each insured, Batoff prepared a "Psychological Evaluation" assessing the insured's psychological condition as impact-

1. Act of March 23, 1972, P.L. 136, No. 52, *as amended*, 62 P.S. §§ 1201–1215. We note that while the "Psychologists License Act" and the "Professional Psychological Practice Act" are prior and current versions of the same statutes at 63 P.S. §§ 1201 *et seq.*, the parties to this action appear to refer to the "License Act" to mean those sections in effect before the 1986 amendments and the "Practice Act" as those sections subsequent to the 1986 amendments. Both versions have relevance to the period of Batoff's practice that is in question.

2. Act of March 23, 1972, P.L. 136, No. 52 *as amended*, Act of April 25, 1986, P.L. 89, 63 P.S. §§ 1201–1218.

3. 49 Pa.Code § 41.1–41.76.

4. In part, Batoff's credentials were in question because Batoff received his Ph.D. from an institution not regionally accredited. This fact was not a consideration by the Psychology Board, however, as such accreditation did not prevent Batoff from qualifying, when he did, to be licensed in this Commonwealth, or from referring to himself as a Ph.D. It is therefore not in respect to the Ph.D. nomenclature that the Psychology Board found that Batoff misrepresented his credentials but rather that he was empirically incompetent to do the psychological evaluations he submitted to the insurance company and to administer the underlying tests.

ed by the accident and spelling out the treatment he had provided.

After several continuances, a formal hearing on the order to show cause commenced before the Hearing Examiner on August 14, 1995. Following the close of the record in January 1996, the Hearing Examiner issued a Proposed Adjudication and Order, recommending that all charges against Batoff be dismissed. The Commonwealth filed Exceptions, requesting the Psychology Board to review the Hearing Examiner's Proposed Adjudication and Order pursuant to 1 Pa.Code § 35.211.[5] On review of the proceedings and all evidence presented, the Psychology Board sustained six of the thirty-three violations, concluding that Batoff violated section 8(4) of the License Act, 63 P.S. § 1208(4), sections 8(a)(9) and (11) of the Practice Act, 63 P.S. §§ 1208(a)(9) and (11), and Ethical Principle 2, 49 Pa.Code § 41.61.[6] The Psychology Board im-

**5.** Section 35.211 provides in pertinent part:

Procedure to except to proposed report.
A participant desiring to appeal to the agency head shall, within 30 days after the service of a copy of a proposed report or such other time as may be fixed by the agency head, file exceptions to the proposed report or part thereof in a brief (designated "brief exceptions").... 1 Pa.Code § 35.211.

**6.** Section 8(4) of the License Act provides as follows:

Section 8. A license previously issued may be revoked if the person licensed be:
(4) Found guilty of the unethical practice of psychology as detailed by the Code of Ethical Standard adopted by the board....
63 P.S. § 1208(4).
Sections 8(a)(9) and (11) of the Practice Act provide as follows:
**§ 1208. Refusal, suspension or revocation of license**
(a) The board may refuse to issue a license or may suspend, revoke, limit or restrict a license or reprimand a licensee for any of the following reasons:

\* \* \* \* \* \*

(9) Violating a lawful regulation promulgated by the board, including but not limited to ethical regulations....

\* \* \* \* \* \*

(11) Committing immoral or unprofessional conduct. Unprofessional conduct shall include any departure from, or failure to conform to, the standards of acceptable and prevailing psychological practice. Actual injury to a client need not be established.
63 P.S. §§ 1208(a)(9) and (11).

posed sanctions consisting of a reprimand and a $3,000 civil penalty against Batoff. Those violations that the Psychology Board sustained essentially set forth that Batoff overstepped the boundaries of his competence in that the psychological reports submitted to State Farm evidenced that he did not possess the requisite competence to administer certain tests or to render psychological evaluations consistent with the applicable and acceptable standards of the profession. On appeal, the Commonwealth Court reversed, finding that the record did not support the Psychology Board's determination of Batoff's violations, and that, in reaching its conclusions, the Psychology Board improperly substituted its own independent judgment for the expert testimony presented before the Hearing Examiner.

We granted the Psychology Board's appeal in order to determine whether the Commonwealth Court erred in rejecting the Psychology Board's position that it could substitute its own independent judgment for that of the expert witnesses and whether the Commonwealth Court exceeded its scope of review by reweighing evidence rather than determining whether substantial evidence supported the findings of the Psychology Board.

The first issue raised is whether the Psychology Board may substitute its own independent judgment for that of the expert witnesses who testified at the hearings. The Hearing Examiner heard testimony from three expert witnesses and also

The pertinent language of Ethical Principle 2 of the Board's regulations in effect during the relevant time period provided as follows:

**Principle 2. Competency.**

\*        \*        \*

The psychologist recognizes the boundaries of his competence and the limitations of his techniques and does not offer services or use techniques that fail to meet professional standards established in particular fields. The psychologist who engages in practice assists his client in obtaining professional help for all important aspects of his problem that fall outside the boundaries of his competence. The principle requires, for example, that provisions be made for the diagnosis and treatment of relevant medical problems and for referral to, or consultation with, other specialists.

8 Pa. B. 2530–2534.

reviewed documentary evidence.[7] Dr. Donald Bersoff, a lawyer and Ph.D. in Psychology, who was qualified in professional ethics, credentials evaluation and psychological testing, and Dr. Leonard Paul, a licensed psychologist in Pennsylvania, both testified for the Commonwealth. Dr. Howard Adelman, a Commonwealth-licensed psychologist (Ph.D.) who had once supervised Batoff's work in a mental health clinical facility, testified for Batoff. On appeal from the Hearing Examiner's decision, the Psychology Board adjudicating this matter consisted of five members: a public member, the Commissioner of Professional and Occupational Affairs, and three psychology professionals holding valid licenses to practice psychology in this Commonwealth and representing a broad spectrum of the practice areas of psychology.[8]

In reversing, the Commonwealth Court found that the Psychology Board ignored the expert testimony presented before the Hearing Examiner and that the Psychology Board improperly made its "own judgment the *only* basis for [its] determination...." *Batoff v. State Bd. of Psychology*, 718 A.2d 364, 367 (Pa.Commw.1998) (emphasis added). Then, factoring out the product of the Psychology Board's own expertise as improper, the Commonwealth Court concluded that any remaining basis for the Psychology Board's decision was insufficient to uphold the charges against Batoff.

7.  Documentary evidence of record included diplomas, certificates and transcripts to substantiate Batoff's formal education; treatment records, including intake reports and notes from intake interviews; raw data from testing; and notes of therapy sessions regarding all patients seen in his professional practice as well as all forty-four psychological evaluations submitted to State Farm. N.T. Vols. I–V.

8.  We note that all professional licensing boards in this Commonwealth, including the State Board of Psychology, are commonly composed of two or more public members in addition to practitioners in the specific field the board regulates. *See, e.g.,* 63 P.S. § 9.2c(a)(2) (State Board of Accountancy); 63 P.S. § 42.2a(a) (State Board of Podiatry); 63 P.S. § 121.1(a) (State Dental Council and Examining Board); 63 P.S. § 212.1(a) (State Board of Nursing); 63 P.S. § 244.2a(a) (State Board of Optometry); 63 P.S. § 422.3(a) (State Board of Medicine); 63 P.S. § 479.19(a) (State Board of Funeral Directors); 63 P.S. § 902.2a (State Board of Landscape Architects); 63 P.S. § 734.31(a) (State Board of Auctioneer Examiners).

We believe that the Commonwealth Court mischaracterizes the process by which the Psychology Board made its determination.

Contrary to the Commonwealth Court's findings, the Psychology Board indeed reviewed Dr. Bersoff's testimony as to Batoff's credentials. Specifically, the Psychology Board cited to Dr. Bersoff's opinion that Batoff "had neither the requisite education nor training to do the testing or the therapy reflected in his reports." State Board of Psychology Adjudication at 37. Additionally, the Psychology Board noted that Batoff's own expert, Dr. Adelman, testified that the training Batoff received under his supervision included no psychological testing. *Id.* at 39. Thus, contrary to the Commonwealth Court's conclusions, the Psychology Board did not ignore or discount Dr. Bersoff's and Dr. Adelman's opinions. Rather the Psychology Board went one step further and reviewed not only the reports at issue but the intake and tests underlying their basis. Upon reviewing the data and the resulting reports, the Psychology Board found the quality of Batoff's "reports alone support these charges." [9] *Id.* at 40. Additionally, the Psychology Board recognized that the testi-

9. The Board found, *inter alia*, that many of the reports in question contained no discussion regarding the nature and extent of an insured's specific injuries, whether or not the insureds were receiving treatment from any other providers or whether additional evaluation and/or treatment was recommended. Furthermore, the assessments lacked distinctive qualities in both form and content, making one report indistinguishable from the next. In addition, while Batoff gave virtually the same battery of tests to each of the insureds, the reports contained no test scores and failed to identify any norms used to evaluate the individual. There was also no description of, or reference to, the insureds' pre-accident medical history or developmental history. Psychology Board Adjudication at 40–41. The Board also specifically cited the unprofessional administration of two tests, evidence of which is disputed by the Commonwealth Court. The Board found that one test was given to an adult insured whose answer sheet showed that he only partially completed the test, rendering any conclusions based thereon invalid. *Id.* at 42–44. The other was an adult achievement test the Board found was mistakenly given to a four-year-old instead of the appropriate Children's Apperception Test. *Id.* at 45–46. The Board therefore found that the evaluation reports in these two cases consisted primarily of conclusory statements without valid substantiating documentation to support such statements.

mony of Dr. Paul, the other Commonwealth witness, may have been tainted with bias because of Paul's litigious history against Batoff.[10] For that reason, the Psychology Board reviewed independently the evidence on which Paul's opinion had been based and came to its own conclusions. Ultimately, the Psychology Board concurred with Paul's opinion as it related to Batoff's report writing skills and his apparent failure, during the time period in question, to recognize the boundaries of his competence and to meet professional standards. Paul's testimony therefore only further validated the Psychology Board's own independent conclusions regarding Batoff's competence. Thus, the Psychology Board neither relied on nor discredited altogether Paul's opinion, but merely set it aside until the Board reviewed Batoff's work directly.

■ While we disagree with the Commonwealth Court that the Psychology Board "substituted" its opinions in this case, Pennsylvania courts have long recognized that administrative boards, comprised of members of the profession they oversee, may base their decisions on the collective expertise of those members. *Pennsylvania Labor Relations Bd. v. Sand's Restaurant Corp.*, 429 Pa. 479, 486, 240 A.2d 801, 805 (1968) (administrative board of experienced officials with adequate appreciation of complexities of subject matter may draw on own experience in factual inquiries); *Barran v. State Bd. of Medicine*, 670 A.2d 765, 768 (Pa.Commw.1996), *appeal denied*, 544 Pa. 685, 679 A.2d 230 (1996) (Board contains medical doctors and is empowered to make determinations and draw conclusions on factual issues without resorting to additional medical testimony). Here, the Commonwealth Court acknowledged that previous case law has allowed for a professional board to make its own independent evaluation. *Makris v. Bureau of Professional & Occupational Affairs*, 143 Pa. Cmwlth. 456, 599 A.2d 279, 282 (1991) ("[i]t is illogical to presume that professionals sitting on an administrative board

**10.** Specifically, Dr. Paul was a defendant in an unrelated civil suit filed against him and State Farm by Batoff in 1989 and which was still ongoing at the time of this adjudication. The suit alleged that Paul and State Farm conspired to destroy Batoff's practice, and Paul had consistently testified against Batoff since 1981.

charged with regulating a profession will not draw upon their special expertise in determinations they are called on to make"); *Kundrat v. State Dental Council & Examining Bd.,* 67 Pa.Cmwlth. 341, 447 A.2d 355, 358 (1982) (Board is quite capable of resolving matter of alleged dental malpractice without aid of expert testimony where Board membership includes president of State Dental Society, Commissioner of Professional and Occupational Affairs and a number of dentists in practice for at least ten years). However, the court explained that in *Makris* and *Kundrat* the boards were empowered to make their own independent evaluation because *no* expert testimony was presented. In contrast, in the case *sub judice,* the court regarded the Psychology Board's independent review in the face of existing expert testimony as an assertion of "unfettered discretion to exercise its own independent judgment in deciding issues requiring expert testimony where expert witnesses did in fact testify about issues before the Board." *Batoff,* 718 A.2d at 368. We disagree, as there is every indication that the Psychology Board merely filtered the existing expert testimony and ample documentary evidence through the lens of its own collective expertise,[11] which, under the circumstances, was the expected, proper, and fair way to proceed. *Kundrat,* 447 A.2d at 358.

Thus, we do not view the Psychology Board's methodology in arriving at its decision as "substitut[ing] its opinion for that of the expert witnesses." *Batoff,* 718 A.2d at 367. Rather, the Psychology Board was merely relying on the totality of the evidence, testimonial and documentary, before rendering an opinion as to whether Batoff adequately upheld the standards of his profession. This Court has previously recognized that those persons who comprise the membership of the various administrative boards have been selected for the special skills and requisite expertise they possess in order to properly render an independent judgment. *Sand's,* 429 Pa. at

11. In so doing, we note that the Psychology Board in large part agreed with the Hearing Examiner, finding that 27 of the 33 violations charged against Batoff were unsupported by adequate evidence and were therefore properly dismissed.

486, 240 A.2d at 805. We therefore adopt the Psychology Board's position that independent review of the evidence of record by a board with the requisite qualifications in the profession under scrutiny is proper, whether or not expert testimony in the board's area of expertise was offered at the hearing level.

The Psychology Board also argues that the Commonwealth Court exceeded its scope of review by reweighing the evidence rather than determining whether substantial evidence supported the findings of the Psychology Board. We agree.

Pennsylvania courts have consistently respected that administrative agencies comprised of persons presumably selected for their specialized experience and expertise are better qualified than any court to make a factual finding on a subject within their field. *See, e.g., Pennsylvania Labor Relations Bd. v. Butz,* 411 Pa. 360, 192 A.2d 707 (1963); *Central Bucks Sch. Dist. v. Central Bucks Educ. Ass'n,* 157 Pa.Cmwlth. 100, 629 A.2d 196 (1993); *Hogan v. Unemployment Compensation Bd. of Review,* 169 Pa.Super. 554, 83 A.2d 386 (1951) (where administrative board rests its conclusions upon its own official experience, courts generally respect its special competence). Thus, it is well settled that an adjudication made by an administrative agency must be affirmed on appeal unless constitutional rights have been violated, an error of law has been made, rules of administrative procedure have been violated or a finding of fact necessary to support the adjudication is not supported by substantial evidence. *Barran,* 670 A.2d at 768 (court may not reweigh evidence presented or judge credibility of witnesses); *Makris,* 599 A.2d at 283 (it is not function of court to judge weight and credibility of evidence given before administrative agency); *Taylor v. Commonwealth of Pennsylvania Unemployment Compensation Bd. of Review,* 40 Pa.Cmwlth. 577, 398 A.2d 231 (1979). Moreover, absent proof of fraud, bad faith, capricious action or abuse of power, it is not within the purview or scope of review of an appellate court to change the adjudication of a regulatory

agency merely because it would have done it differently or because it disagrees with the philosophical approach of the agency. *American Auto Wash, Inc. v. Department of Envtl. Protection,* 729 A.2d 175 (Pa.Commw.1999), *appeal denied,* 560 Pa. 711, 743 A.2d 923 (1999); *North American Coal Corp. v. Air Pollution Comm'n,* 2 Pa.Cmwlth. 469, 279 A.2d 356 (1971).

Here, once the Commonwealth Court decided that the Psychology Board's own collective expertise played an improper role in its conclusions as to Batoff's professional violations, the court itself then reweighed substantially the same evidence reviewed by the Board and arrived at an opposite result. By mischaracterizing the Psychology Board's decision as based solely on its own independent opinion and then factoring out that opinion as invalid, the court ruled that the Psychology Board did not have the requisite substantial evidence necessary to reach a valid agency adjudication. A careful review of the record, however, demonstrates that the Psychology Board's independent review of Batoff's conduct and prepared reports was, first, within their area of professional expertise and therefore permissible and, second, merely an additional step to ensure the verity and validity of the several experts' opinions.

As we have determined that such a board may factor in its own independent review of matters within its expertise, the Commonwealth Court may not discount conclusions drawn from such review. Furthermore, as there is no allegation of bad faith, fraud, capricious action or abuse of power, the Commonwealth Court, in reversing the Board's decision, itself impermissibly reweighed the evidence. In so doing, the court exceeded its scope of review, substituting its own opinion for that of an administrative board whose members have special competence germane to the profession under scrutiny.

We therefore reverse the order of the Commonwealth Court and reinstate the decision of the Psychology Board.