IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Cecilia Olugbade-Oseyemi, M.D.,     :
                Petitioner     :
                          :
        v.                  :
                          :
State Board of Medicine,         :    No. 882 C.D. 2023
                Respondent    :    Submitted: July 5, 2024

BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE CHRISTINE FIZZANO CANNON, Judge
              HONORABLE MATTHEW S. WOLF, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON                FILED: October 25, 2024

Cecilia Olugbade-Oseyemi, M.D. (Petitioner) petitions for review from the July 21, 2023, final order of the State Board of Medicine (Board). The Board's order stated that upon Petitioner's request for reconsideration, it reaffirmed its May 25, 2023, adjudication and order denying Petitioner's application for a medical license, which reversed the recommendation of a hearing officer from the Bureau of Professional and Occupational Affairs (Bureau). Upon review, we affirm.

## I. Procedural and Factual Background

The facts of this matter are not in dispute. In March 2022, Petitioner applied to the Board for a medical license based on her 2005 graduation from Temple University's medical school. Certified Record (C.R.) at 8-22.[1] The Board provisionally denied her application in May 2022 because she had not completed

---

[1] Certified Record (C.R.) references are to electronic pagination.

two years of residency training[2] after medical school as required by Section 29(b) of the Medical Practice Act of 1985 (MPA).[3] C.R. at 24-25; 63 P.S. § 422.29(b) (stating that an applicant must successfully complete "as a resident, two years of approved graduate medical training"). Petitioner filed a counseled appeal, asserting that she should be eligible for a license pursuant to Section 27 of the MPA, which grants the Board discretion to award a license when the applicant does not meet the standard requirements but has "achieved cumulative qualifications which are accepted by the board as being equivalent to the standard requirements for the license or certificate." *Id*. at 27-28; 63 P.S. § 422.27. Petitioner's appeal did not mention her past nursing experience but stated that she had 18 months of residency experience and had completed an intensive one-month physician "reentry/refresher" program, the combination of which should be sufficient for a license. C.R. at 27-28. The Board referred the matter to a Bureau hearing officer. *Id*. at 31.

At the October 2022 hearing, Petitioner testified that she was born in Nigeria and has a 1983 bachelor's degree in biology from a Nigerian university. C.R. at 55. She came to the United States in 1989 with two young sons to join her husband, who was in graduate school at the University of Pittsburgh. *Id*. at 57-59. She became a licensed practical nurse (LPN) in 1991. *Id*. at 60. Her husband died that year and, as a single mother, she became a registered nurse (RN) in 1993. *Id*. at 60-63. She then worked as a nurse in multiple hospital departments, during which

---

[2] The Accreditation Council for Graduate Medical Education (ACGME) describes residency as "the crucial step of professional development between medical school and autonomous clinical practice. It is in this vital phase of the continuum of medical education that residents learn to provide optimal patient care under the supervision of faculty members[.]" https://www.acgme.org/globalassets/pfassets/programrequirements/cprresidency_2023.pdf (last visited October 24, 2024).

[3] Act of December 20, 1985, P.L. 457, *as amended*, 63 P.S. §§ 422.1-422.44.

time she completed a post-baccalaureate pre-medical school program. *Id.* at 67. After taking the Medical College Admission Test (MCAT), she attended medical school; during that time, she worked full time as a critical care nurse, remarried, and had a daughter. *Id.* at 68-70.

After graduating medical school in 2005, Petitioner started a residency in internal medicine at Crozer-Chester Hospital but had to leave after six months to resume working as a nurse so she could support her family. *Id.* at 73. She was later able to complete a full first year of residency in family medicine at Chestnut Hill Hospital between 2008 and 2009. *Id.* at 75. She stated that internal medicine and family medicine are similar, but family medicine also includes treatment of children and women's health. *Id.*

After Petitioner completed her first year of residency at Chestnut Hill Hospital in 2009, she was divorced; she did not feel she could continue with the demands of residency as a single mother to her young daughter, so she did not continue to the second year. C.R. at 76-77. According to her resumé, she has not worked or trained in the medical field since then. *Id.* at 18-19. However, she did her best to stay current with medical literature and passed the United States Medical Licensing Examination (USMLE), a three-part exam that all medical doctors must pass to be licensed by a state board of medicine.[4] *Id.* at 90.

Petitioner testified that in September 2020, during the COVID-19 pandemic, she took and passed a month-long virtual program at Drexel University's medical school; the program is a "refresher/reentry course" designed primarily for inactive doctors to renew their licenses and return to practice and for international

---

[4] https://www.usmle.org/about-usmle (last visited October 24, 2024).

medical students to prepare for residency programs in the United States.[5] C.R. at 91 & 128. It was recommended to Petitioner by one of her professors at Temple and by Board staff when she called to discuss her wish to become licensed. *Id*. at 91-92. It included independent study, presentations, case studies involving patients played by actors, and participation in grand rounds[6] via Zoom. *Id*. at 96-105 & 124. According to Petitioner, many aspects of the program resembled what she did during her two prior first-year residency experiences. *Id*. at 106. Participants were evaluated by doctors during and at the end of the program. *Id*. at 96. After completing the program, Petitioner unsuccessfully applied for residencies for 2021 and 2022. *Id.* at 92 & 106. In 2022, she decided to apply for a license based on her cumulative qualifications, including the Drexel program and her years of nursing experience. *Id*. at 109. Once she receives her license, she intends to practice in a medically underserved minority community. *Id*. at 108.

John Michel, D.O., testified on Petitioner's behalf. C.R. at 81. He is licensed in Pennsylvania and board certified in internal medicine. *Id*. He is part of a primary care group practice that treats adult patients in North Philadelphia, which is a medically underserved area. *Id*. at 82. He is familiar with Petitioner and would hire her for his practice if she obtains a license. *Id*. at 83. He is not concerned that she does not have two full years of residency training in light of her years as a nurse. *Id*. at 84. He would be willing to serve as her preceptor if the Board conditioned her license on completing three to six months of medical practice under his supervision.

---

[5] https://drexel.edu/medicine/academics/continuing-education/physician-refresher-re-entry-program/ (last visited October 24, 2024).

[6] Grand rounds "are an integral component of medical education. They present clinical problems in medicine by focusing on current or interesting cases. [They] originated as part of residency training wherein new information was taught and clinical reasoning skills were enhanced." https://pubmed.ncbi.nlm.nih.gov/10296965/ (last visited October 24, 2024).

4

*Id*. at 85.  Petitioner testified that she was willing to do a preceptorship with Dr. Michel in order to receive her license.  *Id*. at 111.

Near the end of the hearing, Board counsel suggested to the hearing officer that Petitioner complete six months of supervised medical practice with a preceptor such as Dr. Michel and be granted her medical license if that proved successful.  C.R. at 135-36 & 140.  Petitioner's counsel argued that her years of nursing experience compensated for her lack of residency time and that she should receive her license outright on that basis, but counsel echoed Petitioner's testimony that she would be willing to serve six months in a preceptorship in order to be licensed.  *Id*. at 138-39.  Although Petitioner had not raised her nursing experience in her written pre-hearing appeal from the Board's May 2022 provisional denial of her license application, Board counsel did not object to her testimony about her nursing background during the hearing or to her counsel's argument about it at the end of the hearing.  *Id*.

On February 8, 2023, the hearing officer issued his proposed adjudication and order.  C.R. at 239.  He included Petitioner's nursing experience in his findings of fact but based his substantive discussion on her 18 months of residency experience and the Drexel program, which tracked Petitioner's written pre-hearing appeal from the Board's provisional denial.  *Id*. at 253; *see also id*. at 27-28.  The hearing officer acknowledged that as a Bureau generalist, he was not familiar with residencies and the impact of missing at least six months of that requirement: "That, and other nuances, are for the Board members to discuss."  *Id*. at 257.  However, he concluded that a six-month preceptorship with Dr. Michel seemed like a reasonable path towards licensure for Petitioner and recommended she

5

be issued a limited license during the preceptorship, after which she could seek a full license from the Board. *Id*. at 259.

The hearing officer's proposed adjudication provided 30 days for either party to file exceptions. C.R. at 261. However, a week later, the Board issued a notice stating that it intended to review Petitioner's case and inviting the parties to submit briefs. *Id*. at 263. Neither side did so, and the Board issued its final adjudication and order on May 25, 2023. *Id*. at 266-68.

The Board largely adopted the hearing officer's findings of fact, including Petitioner's account of her nursing experience. C.R. at 268-69, 277 & 282. Like the hearing officer, the Board addressed Petitioner's 18 months of residency and the Drexel program, which tracked her written pre-hearing appeal from the Board's provisional denial. *Id*. at 280; *see also id*. at 27-28.

The Board observed that although Petitioner had completed 18 total months of residency, it was all at the first-year level, and she had not acquired any second-year residency time. C.R. at 279-80. The Board also concluded that the Drexel program was not an adequate substitute for or equivalent to the MPA's two-year residency requirement. *Id*. at 281. The Board next stated that the proposed preceptorship with Dr. Michel "does not take the place of approved graduate training at a second-year level" because the Board could not be assured that the arrangement would meet or come close to national residency standards set by the Accreditation Council for Graduate Medical Education (ACGME). *Id*. at 281 n.5. The Board stated that its duty and interest to protect the public from unqualified doctors "greatly outweighs" Petitioner's evidence and arguments in favor of licensure. *Id*. at 282. The Board added that Petitioner could receive a license if she completed one year of residency training at the second-year level. *Id*.

6

Petitioner requested reconsideration. C.R. at 286-89. She asserted that the Board wrongly under-weighed her completion of the Drexel program, passage of all three parts of the USMLE and willingness to undertake a preceptorship, the alleged unlikeliness that at her age she would be accepted into a second-year residency program, the alleged lack of significant differences between the first and second years of residency, and her years of nursing experience. *Id*. at 288. The Board granted reconsideration but reaffirmed its denial of her license application without further discussion in a July 21, 2023, final order. *Id*. at 295. Petitioner timely appealed to this Court.

## II. Issues & Parties' Arguments

Petitioner argues that the Board "abused its discretion when it determined that [her] cumulative qualifications are not equivalent to the standard requirements" for a medical license. Petitioner's Br. at 10. She avers that the Board "failed to consider the entire record of [her] cumulative achievements and wrongly focused too narrowly on her failure to complete the full two-year residency requirement." *Id*. at 12. Specifically, she states that the Board "failed to consider that passing all three steps of the USMLE evidences [her] clinical competency to practice medicine." *Id*. at 13. She also asserts that the Board "improperly discounted the significance" of the Drexel program as part of her cumulative qualifications. *Id*. at 14. She maintains that her willingness to undergo a six-month preceptorship should have been seen as part of her cumulative qualifications and not as an attempt to replicate a residency. *Id*. at 15. Lastly, she asserts that the Board "failed to consider" her extensive nursing background, including in supervisory roles, which "provided training and experience that most [residents] lack." *Id*. at 13.

7

Board counsel responds that the Board did not abuse its discretion and that its determinations were supported by substantial record evidence. Board's Br. at 12-13. Counsel notes the hearing officer's acknowledgment that he was not familiar with medical residencies and that the question was for the Board to evaluate. *Id*. at 17. Counsel adds that because Petitioner took the Drexel program remotely during the COVID-19 pandemic, she was further deprived of an essential aspect of residencies: hands-on diagnoses and care of live patients. *Id*. at 18. Counsel avers that the Board's focus was limited to Petitioner's actual medical education and training and that, as such, her nursing experience was not relevant. *Id*. at 17.

Board counsel adds that the bulk of Petitioner's medical training and experience occurred 15-20 years ago. Board's Br. at 20. Counsel explains that medical treatment and training evolves constantly, and Petitioner's combination of self-study, the one-month remote Drexel program, and a proposed six-month preceptorship did not ensure the same level of training inherent in a formal and contemporary residency program. *Id*. Counsel acknowledges Petitioner's wish to work in underserved communities, but notes that the Board's duty is to ensure that these areas "are just as protected from unqualified physicians as any other area in this Commonwealth." *Id*. at 21.

## III. Discussion

When considering a professional board's denial of a licensing application, we determine whether the board's findings of fact are supported by substantial record evidence or whether it committed an error of law or an abuse of discretion. *LaStella v. Bureau of Pro. & Occupational Affairs, State Bd. of Psychology*, 954 A.2d 769, 772 n.2 (Pa. Cmwlth. 2008); *compare Haentges v. State*

8

*Bd. of Dentistry*, 307 A.3d 823, 834 (Pa. Cmwlth. 2023) (holding that dental board abused its discretion in finding applicant's qualifications from New York were not substantially equivalent to Pennsylvania's required qualifications), *with Bethea-Tumani v. Bureau of Pro. & Occupational. Affs., State Bd. of Nursing*, 993 A.2d 921, 932 (Pa. Cmwlth. 2010) (holding that nursing board did not abuse discretion in denying applicant's nursing license due to past criminal convictions). "It is not within the province of this Court to retry the case or to make independent factual findings and conclusions of law." *Balshy v. Pa. State Police*, 988 A.2d 813, 835 (Pa. Cmwlth. 2010). We view the evidence and all reasonable inferences arising from the evidence in the light most favorable to the prevailing party. *Id*. If the agency's determinations are supported by substantial evidence, they are binding on this Court. *Id*.

Also, "Pennsylvania courts have long recognized that administrative boards, comprised of members of the profession they oversee, may base their decisions on the collective expertise of those members." *Batoff v. State Bd. of Psychology*, 750 A.2d 835, 840 (Pa. 2000). An appellate court may not reverse the determination of an agency merely because the court "would have done it differently or because it disagrees with the philosophical approach of the agency." *Id.* at 841. "An agency is not required to address each and every allegation of a party in its findings, nor is it required to explain why certain testimony has been rejected." *Balshy*, 988 A.2d at 835. The findings need only be sufficient to enable the Court to determine the questions and ensure the conclusions follow from the facts without reweighing the evidence. *Id*. at 835; *Batoff*, 750 A.2d at 841.

Section 29(b) of the MPA states that in order to attain an unrestricted medical license, a graduate of an accredited medical college must have "completed

successfully, as a resident, two years of approved graduate medical training." 63 P.S. § 422.29(b); *see also* 49 Pa. Code § 17.1(a)(4)(ii). Distinct from the residency requirement, the applicant must also pass all three parts of the USMLE. 49 Pa. Code § 17.1(a)(1)(i). However, Section 27 of the MPA allows for licensure by reciprocity or endorsement, as follows:

> Reciprocity or endorsement may be established at the discretion of the board. . . . As used in this section the term "endorsement" means the issuance of a license or certificate by the board to an applicant who does not meet standard requirements, *if the applicant has achieved cumulative qualifications which are accepted by the board as being equivalent to the standard requirements for the license or certificate*.

63 P.S. § 422.27 (emphasis added). "[T]he Board contains medical doctors and the Secretary of Health pursuant to Section 3 of the MPA, 63 P.S. § 422.3; and it is empowered to make determinations and draw conclusions on factual issues" regarding whether licensing qualifications have been met. *Barran v. State Bd. of Med.*, 670 A.2d 765, 768 (Pa. Cmwlth. 1996). As such, the Board was tasked here with deciding whether Petitioner's qualifications are equivalent to the standards for a medical license in Pennsylvania.

First, the Board properly focused on Petitioner's lack of two full years of residency. This was the only requirement in Section 29(b) of the MPA that Petitioner lacked, so the Board had to determine whether her cumulative qualifications were equivalent to two years of residency. Also, Petitioner's passage of all three parts of the USMLE could not be part of the Board's consideration of the residency requirement because the USMLE is a separate requirement. *See* 49 Pa. Code § 17.1(a)(1)(i).

10

Regarding the Drexel program, the Board described it as primarily designed and intended to serve as an update for already-licensed doctors seeking to return to practice after time away or relocation. C.R. at 281. The program's website also states that it is available for medical school graduates seeking additional training and experience in anticipation of applying for a residency program. *See* https://drexel.edu/medicine/academics/continuing-education/physician-refresher-re-entry-program/for-prospective-students/ (last visited October 24, 2024).

The Board, comprised primarily of doctors tasked with determining whether a candidate's qualifications are equivalent to the standard two-year residency requirement, was well-positioned to apply its understanding of residency and decide that the Drexel program was not sufficiently equivalent to the full residency experience. *See Batoff*, 750 A.2d at 841; *Barran*, 670 A.2d at 768. This Court cannot impose its discretion in the process and conclude otherwise, even if Board staff recommended that Petitioner take the Drexel course when she contacted them to discuss her options. *See Balshy*, 988 A.2d at 835; *Batoff*, 750 A.2d at 841.

The Board also concluded that the proposed six-month preceptorship with Dr. Michel was not sufficiently equivalent to a second-year residency because residencies are subject to accreditation based on standards propounded by the ACGME, and the Board "has no way of assuring that [Petitioner's] completion of a preceptorship will meet the Board's standards for graduate medical training." C.R. at 281 n.5. Again, the Board is specifically positioned and qualified to apply its understanding of residency and decide that the proposed preceptorship was not equivalent. *See Batoff*, 750 A.2d at 841; *Barran*, 670 A.2d at 768. This Court cannot impose its discretion in the process and conclude otherwise. *See Balshy*, 988 A.2d at 835; *Batoff*, 750 A.2d at 841.

11

Lastly, Petitioner asserts that the Board abused its discretion by "failing to consider" her nursing experience. Although she did not include it in her written pre-hearing appeal from the Board's May 2022 provisional denial of her application, she testified to it at the hearing, and her counsel raised and preserved it for consideration when he stated at the hearing that it should be considered as part of her cumulative qualifications. C.R. at 27-28 & 138-39. Also, Board counsel did not object at the hearing to either Petitioner's testimony or her counsel's argument about her nursing background. *See id*. at 138-39.

Petitioner testified that she worked as an LPN and then as an RN almost continuously from 1991 through 2008, including during the years she attended medical school. *See* C.R. at 60-73. The Board found as facts that she had "extensive patient contact" while working as a nurse and that she worked in "nearly every type of unit in the hospital including the medical/surgery unit, the medical intensive care unit, and the cardiac intensive care unit." *Id*. at 271. She also held supervisory nursing roles and worked with residents to provide patient care. *Id*. at 272.

The hearing officer and the Board included Petitioner's nursing experience in their findings of fact, but neither directly addressed it in their written discussions, which focused on Petitioner's 18 months of first-year residency and the Drexel program. C.R. at 239-60 & 266-82. The Board did state that "in viewing a totality of the circumstances" and considering the public interest in protecting the public from under-qualified doctors, the evidence weighed against issuing Petitioner a medical license. *Id*. at 282. As noted, after the Board issued its determination, Petitioner specifically raised her nursing background in her request for reconsideration. C.R. at 288. The Board's July 2023 final order upholding its denial on reconsideration included no additional discussion, but simply stated that the

12

Board reconsidered Petitioner's case and again denied her application for a medical license. *Id.* at 295.

The Board's failure to draw a specific conclusion regarding Petitioner's nursing experience in its substantive discussion does not mean that the Board erred or abused its discretion in denying her license application. Pennsylvania's professional licensing boards, including the medical board, are particularly well positioned to make these kinds of determinations. *See Batoff*, 750 A.2d at 841; *Barran*, 670 A.2d at 768. In doing so, they are "not required to address each and every allegation of a party in its findings," nor are they "required to explain why certain testimony has been rejected" as long as their findings are "sufficient to enable the Court to determine the questions and ensure the conclusions follow from the facts." *Balshy*, 988 A.2d at 835.

Such is the case here. As primary factfinder, the Board did not ignore Petitioner's nursing experience; it acknowledged it by including it in the findings of fact. However, the record also establishes that Petitioner's nursing experience ceased in 2008 when she began her second effort at a residency, which was the last time she worked in the medical field prior to applying for her medical license 14 years later in 2022. C.R. at 18-19 & 75-77. Moreover, while the roles and functions of nurses and doctors coordinate with each other, they are not the same. In the patient care setting, nurses may "identif[y] signs and symptoms to the extent necessary to carry out the nursing regimen," but they may not provide medical diagnoses, which are "final conclusions about the identity and cause of the underlying disease." *Flanagan v. Labe*, 690 A.2d 183, 185-86 (Pa. 1997), *overruled in part on other grounds by Freed v. Geisinger Med. Ctr.*, 971 A.2d 1202 (Pa. 2009). By the same token, nurses cannot be liable for decisions reserved to doctors, such as

13

prescribing medication. *Navarro v. George*, 615 A.2d 890 (Pa. Cmwlth. 1992) (holding that nurse was not liable for dispensing diabetes medication prescribed by a doctor that allegedly caused an inmate to sustain a heart condition); *see also Baur v. Mesta Mach. Co.*, 176 A.2d 684, 692 (Pa. 1961) (stating that "[n]urses are not permitted to diagnose. That is the function of physicians."). Here, the Board would have been aware, within its expertise, of the passage of time since Claimant's last medical training and nursing experience, as well as the differences between nurses and doctors.

The Board explained why Petitioner's prior first-year residency experience and the Drexel program were not equivalent to a full two-year residency. The Board was well-suited to make those determinations within its understanding of residency in the course of a doctor's overall medical training. *See Batoff*, 750 A.2d at 841; *Barran*, 670 A.2d at 768. In this regard, this case resembles *LaStella*, where this Court upheld the State Board of Psychology's determination that the applicant's participation in the in-person aspects of her doctoral education at an online university was not the functional equivalent of the requirement to complete a traditional residency program. *See* 954 A.2d at 773-74.

The Board also identified and included Petitioner's nursing experience in its findings of fact, so it was certainly aware of that experience when it weighed the evidence and evaluated Petitioner's cumulative qualifications. The Board was not obliged to explain the weight, or lack thereof, that it gave Petitioner's nursing experience as part of its evaluation. *See Balshy*, 988 A.2d at 835. Likewise, this Court cannot reweigh the evidence and conclude that Petitioner's past nursing experience was overwhelming, strong, or critical in favor of issuing her a medical license. *See Balshy*, 988 A.2d at 835; *Batoff*, 750 A.2d at 841.

14

The key phrase in Section 27 of the MPA is that a candidate's cumulative qualifications must be "accepted by the [B]oard as being equivalent to the standard requirements for the license or certificate." 63 P.S. § 422.27. The Board here did not accept Petitioner's qualifications as equivalent to a two-year residency, which was her only missing requirement, and the Board sufficiently explained its reasons with reference to record evidence. *See Balshy*, 988 A.2d at 835; *see also LaStella*, 954 A.2d at 773-74. Having reviewed the record and the parties' arguments, we are constrained to conclude that the Board did not err or abuse its discretion in denying Petitioner a medical license by endorsement. *LaStella*, 954 A.2d at 772 n.2.

## IV. Conclusion

For the foregoing reasons, the Board's July 21, 2023, order is affirmed.

_____
CHRISTINE FIZZANO CANNON, Judge

15

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Cecilia Olugbade-Oseyemi, M.D., :
                Petitioner :
                                :
        v. :
                                  :
State Board of Medicine, : No. 882 C.D. 2023
                Respondent :

# **O R D E R**

AND NOW, this 25th day of October, 2024, the July 21, 2023, final order of the State Board of Medicine is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge