Roger J. **MORRIS, Ph.D., Petitioner,**

v.

**STATE BOARD OF PSYCHOLOGY, Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 11, 1997.
Decided April 9, 1997.
Publication Ordered July 8, 1997.

---

Before FLAHERTY and LEADBETTER, JJ., and SILVESTRI, Senior Judge.

SILVESTRI, Senior Judge.

Roger J. Morris, Ph.D. (Morris) petitions for review of an order of the Bureau of Professional and Occupational Affairs and the State Board of Psychology (Board) (collectively "Commonwealth") which revoked the license to practice psychology issued to Morris.

The procedural history is as follows. On May 13, 1994, the Commonwealth filed a two (2) count Order to Show Cause against Morris charging him with violating two (2) sections, 8(a)(9) and (11) of the Professional Psychologists Practice Act (Act)[1]. The Order to Show Cause was based upon allegations that Morris made inappropriate self-disclosures to a female patient, L.D., toward the end of a therapeutic relationship with her, and engaged in sexual intimacies with L.D.

Morris filed an Answer denying the allegations set forth in the Order to Show Cause. Thereafter, hearings were held before a hearing examiner on October 6, 1994 and November 18, 1994. On September 22, 1995, the hearing examiner issued a proposed Adjudication and Order recommending that Morris' license to practice psychology be suspended for a period of three (3) years. Morris filed exceptions to the Adjudication and Order of the hearing examiner to the Board. Morris filed a brief to the Board in support of his exceptions. Briefs were submitted by the Commonwealth in response to the exceptions of Morris. The Board, without hearing arguments, issued an Adjudication and Order on January 20, 1996 revoking the license to practice psychology of Morris. This appeal followed.

■ Morris presents two arguments for our consideration. First, Morris argues that the Board erred in determining he had breached his ethical duties to L.D. in violation of Section 1208(a)(9) and (11). Second, Morris asserts the determination of the Board was not based upon substantial evidence. Our scope of review is limited to a

Thomas P. Cole, II, Greensburg, for petitioner.

Jackie Wiest Lutz, Harrisburg, for respondent.

1. Act of March 23, 1972, P.L. 136, No. 52, *as* *amended*, 63 P.S. §§ 1208(a)(9) and (11).

determination of whether there has been a violation of constitutional rights, errors of law were committed, or whether necessary findings of fact made by the Board are supported by substantial evidence. *Makris v. Bureau of Professional & Occupational Affairs, State Board of Psychology,* 143 Pa. Cmwlth. 456, 599 A.2d 279 (1991).

██ Further, when reviewing an administrative order, the prevailing party is entitled to the benefit of every inference which can logically be drawn from the evidence when viewed in a light most favorable to the prevailing party. *Doerr v. Pennsylvania Liquor Control Board,* 88 Pa.Cmwlth. 610, 491 A.2d 299 (1985).

██ Regarding the first issue, we initially note that 63 P.S. §§ 1208(a)(9) and (11), provide as follows:

1208. Refusal, suspension or revocation of license.

(a) The board may refuse to issue a license or may suspend, revoke, limit or restrict a license or reprimand a licensee for any of the following reasons:

. . .

(9) Violating a lawful regulation promulgated by the board, including, but not limited to, ethical regulations . . .

. . .

(11) Committing immoral or unprofessional conduct. Unprofessional conduct shall include any departure from, or failure to conform to, the standards of acceptable and prevailing psychological practice. Actual injury to a client need not be established.

Further, the regulation in the Code of Ethics, at 49 Pa.Code § 41.61, in particular ethical Principle 6, provides:

Principle 6. Welfare of the consumer.

(b) Psychologists are continually cognizant of their own needs and their inherently powerful position vis a vis clients, students and subordinates, in order to avoid exploiting their trust and dependency. Psychologists make every effort to avoid dual relationships with clients or relationships which might impair their professional judgment or increase the risk of exploita-

tion. Examples of dual relationships include treating employes, supervisees, close friends or relatives. *Sexual intimacies with clients are unethical.*

(Emphasis added.)

██ Morris contends that because the last therapy session with L.D. occurred in October of 1989, and since sexual intercourse between him and L.D. did not occur until late 1989 or early 1990, he did not violate the Act as charged because sexual relations with former clients is not prohibited. Here the record reveals no evidence that Morris formally terminated therapy with L.D. before sexual relations occurred. The testimony of record reflects that Morris stopped billing L.D. for therapy sessions sometime around October of 1989. However, a psychologist cannot terminate a psychologist/patient relationship simply by ceasing to bill a patient. *Giddings v. State Board of Psychology,* 669 A.2d 431 (Pa.Cmwlth.1995). In *Giddings,* we stated that:

the therapist must take certain steps before terminating a therapeutic relationship with a patient. At the very least, he must have a discussion with the patient about whatever additional assistance is necessary and about appropriate providers of the needed services.

669 A.2d at 434.

Here, the therapeutic relationship had not terminated at the time of the sexual intimacies between L.D. and Morris.

The record supports the determination that sexual intimacies, prohibited by Ethical Principle 6, occurred between L.D. and Morris prior to termination of the therapeutic relationship. For example, at the last paid therapy session in October of 1989, Morris sat next to L.D. on the couch in his office, held her hand, and told her he loved her. N.T. 32. Additionally, during the fall of 1989, therapy sessions between L.D. and Morris began to last longer, N.T. 25–26; Morris began to make advances toward L.D. to become friends and to socialize and have dinner together, N.T. 29–30; and Morris began to make personal self-disclosures to L.D. during her therapy sessions, N.T. 26–27. Such evidence is indicative of an intimate

personal and sexual relationship developing between L.D. and Morris during the therapeutic sessions. Such intimacies are expressly prohibited.

■ Finally, as to last issue, Morris asserts only that finding 29 of the Board is not supported by substantial evidence. Finding 29 states:

29. There were no discussions between Respondent and L.D. regarding L.D.'s formal termination of therapy. (N.T. 31).

■ Substantial evidence is defined as such relevant evidence which a reasonable mind might accept as adequate to support a conclusion. *Mihok v. Department of Public Welfare, Woodville State Hospital,* 147 Pa. Cmwlth. 344, 607 A.2d 846 (1992). Here, the record reveals the testimony of L.D., relied upon by the Board, relative to formal termination of L.D.'s therapy. The testimony of L.D. indicates that there were no discussions between L.D. and Morris regarding formal termination of therapy. N.T. 31. Subsequent testimony that references Morris' suggestion that L.D. see another psychologist refers only to the time period in March or April of 1990, after the sexual relationship between Morris and L.D. began. Thus, the finding of the Board is supported by substantial evidence of record.

Accordingly, we affirm the order of the Commonwealth revoking the license to practice psychology of Morris.

### ORDER

AND NOW, this 9th day of April, 1997, the January 30, 1996 order of the State Board of Psychology is affirmed.