The NATIONAL ASSOCIATION OF FORENSIC COUNSELORS, Petitioner,

v.

STATE BOARD OF SOCIAL WORKERS, MARRIAGE AND FAMILY THERAPISTS AND PROFESSIONAL COUNSELORS, Respondent.

Commonwealth Court of Pennsylvania.

Argued Dec. 3, 2002.

Decided Jan. 2, 2003.

Elliot A. Strokoff, Harrisburg, for petitioner.

Beth S. Michlovitz, Harrisburg, for respondent.

BEFORE: PELLEGRINI, Judge, LEAVITT, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

The National Association of Forensic Counselors (Petitioner) petitions for review of an order of the Commonwealth of Pennsylvania, Bureau of Professional and Occupational Affairs, State Board of Social Workers, Marriage and Family Therapists and Professional Counselors (Board). The Board denied Petitioner's request to be recognized as a national credentialing agency for the purpose of allowing its members to receive an exemption from taking the Board's licensing exam. We affirm.

On December 21, 1998, Section 9(c)(5) of the Social Workers, Marriage and Family Therapists and Professional Counselors Act (Act)[1] was amended to allow professional counselors to receive a license to practice in Pennsylvania without having to take an examination administered by the Board if, among other things, the counselor "[c]an demonstrate holding a current professional certification in professional counseling and *having passed a national certification examination* in professional counseling administered by a *nationally recognized* credentialing agency *approved by the board.*" (emphasis added).[2] We note that the Act was only relatively recently enacted by the Legislature and there are no prior cases dealing with the Act. Thus, the issue in this case is one of first impression.

Because it wished to take advantage of Section 9(c)(5), Petitioner contacted the Board in February of 2002 and requested that it be added to the list of organizations whose members are exempt from taking the Pennsylvania professional counselors exam. On March 6, 2002, the Board denied Petitioner's request to be added to this Exemption List. The Board further stated that "[i]n arriving at this decision, the Board considered the remarks made in the January 2002 edition of *American Psychologist* pertaining to mental health professionals" which stated that the utility of credentialing programs is preliminary and that the value of these programs should be studied more thoroughly. Thereafter, Petitioner requested a hearing, which was held on March 22, 2002.

At the hearing before the Board, Petitioner presented the testimony of its president, Francis Deisler, who holds a doctorate in counseling psychology. Dr. Deisler

1.  Act of July 9, 1987, P.L. 220, *as amended,* 63 P.S. § 1909(c)(5).

2.  The amendments to the Act became effective on February 19, 1999. In order to take advantage of the provision of the Act which allows professional counselors to receive a Pennsylvania professional counselors license without having to take a Pennsylvania examination, Section 9(c)(1) of the Act provides that the license application must be submitted to the Board within four years of the effective date of the Act, which is February 19, 2003. Accordingly, this Court granted Petitioner's unopposed motion for expedited consideration.

stated that Petitioner, which was formed in 1994, has approximately 33,000 members, with approximately 846 of those members located in Pennsylvania. Petitioner's brochure indicates that it certifies forensic counselors such as criminal justice specialists, domestic violence counselors, private practitioners, agencies, probation/parole officers, departments of corrections employees, mental health and addiction professionals. (Petitioner's Exhibit No. 1). Petitioner does have a requirement that its members be licensed in the States in which they practice. However, when Petitioner started operating, Pennsylvania did not license forensic counselors. Therefore, this requirement was waived for Pennsylvania residents. Now, Pennsylvania licenses these counselors and Petitioner believes that its members, all of which have passed its certification examination, should be exempt from Pennsylvania's licensing requirements.

With regard to Petitioner's certification examination, which is the National Board of Addiction Examiners (NBAE) exam, Dr. Deisler testified that a committee was formed in 1995 for the purpose of developing a professional examination. This process included soliciting questions from its members and hiring the Professional Testing Corporation (PTC) to help develop the test. Petitioner received around 8000 questions, which PTC then pared down to 4000. Then, PTC did an "item analysis" on each question for the purpose of categorizing the questions and reducing the number of questions down to a reasonable size for an examination. This process took a total of two years to complete. The examination itself was then tested by administering it on the East Coast and West Coast for the purpose of performing statistical analysis and choosing a cutoff score. An outline of the content of the examination, which consists of 160 questions, was entered into evidence as Petitioner's Exhibit No. 4a.

Dr. Deisler further testified that Petitioner is approved in the States of California, Oregon, Washington and Alabama as a certifying body for alcohol and drug abuse counselors. In addition, Petitioner certifies the drug abuse counselors in the United States Army and is the only certification body for the United States Coast Guard's family advocacy program for addictions counselors and domestic violence. Petitioner also certifies the Federal Bureau of Probation and Parole and a number of other State probation and parole departments. Dr. Deisler also noted that the State of Indiana, which is where Petitioner is based, recognized Petitioner for the purposes of "grandfathering" in the licenses of mental health counselors.

During the hearing, Dr. Deisler was also asked how many questions in Petitioner's test deal with co-morbidity, also called a co-occurring disorder, which is the combination of a substance abuse problem with a mental health issue. Dr. Deisler responded that:

> ... we're not interested in the mental health issues. What we are primarily interested in is the criminal offender, sociopathy, anti-social personality disorders. During the assessment or evaluation of an offender is a mental health issue that's also diagnosed differently. *Our examination is specifically what we feel that someone counseling a criminal justice client would need to know about addictions to be able to determine whether this is truly an addictive individual* and also to have the knowledge on someone that's an anti-social personality disorder or sociopath to be able to determine—there's a dual diagnosis there to be determined which is real. If there's a mental health issue ...

The trend seems to be that everything is addictions ... our stance from day one is that there is a difference between someone that's chemically dependent and also an anti-social personality disorder that can be treated concurrently. (N.T. 05/14/02, pp. 68–70; R.R. 74a–76a) (emphasis added). After the hearing, Dr. Deisler submitted an Affidavit dated May 30, 2002 stating that a total of 33 questions in Petitioner's examination deal with "Co–Occurring Disorders listed in the DSM IV".[3]

On September 11, 2002, the Board issued its decision and order concluding that:

> 3. [Petitioner's] NBAE exam does not include a sufficient number of questions pertaining to co-occurring disorders that would reflect the breadth required of a licensed professional counselor ...
>
> 4. [Petitioner's] NBAE exam is narrowly focused on addictions counseling ...
>
> 5. [Petitioner] certifies individuals who specialize in addictions counseling rather than individual who would be qualified to practice the entire spectrum of professional counseling ...

(Board opinion, p. 5). Furthermore, the Board stated that it "recognizes that the privilege of licensure as a professional counselor enables the holder to practice all facets of professional counseling. As set forth in Section 3 of the Act, 63 P.S. § 1903, a licensed professional counselor is permitted to evaluate and treat 'mental, emotional or behavioral disorders and associated stresses which interfere with mental health and normal human growth and development.' The Board is not satisfied that individuals certified through [Petitioner] have the requisite knowledge to be able to evaluate and treat a wide range of normal and abnormal mental health issues." (Board's opinion, pp. 7–8). Accordingly, the Board denied Petitioner's request to be placed on the Exemption List. This appeal followed.[4]

On appeal, Petitioner argues that: 1) because the Act provides no standards for Board approval of a national credential for licensure without examination, it is an unconstitutional delegation of Legislative power in violation of Article II, Section 1 of the Pennsylvania Constitution, 2) the order of the Board is void because the Act is unconstitutionally vague in violation of Petitioner's due process rights, 3) Petitioner's exam was held to a higher and different standard than those required for other national certification exams approved by the Board, thereby unconstitutionally discriminating against Petitioner and its members in violation of Article I, Section 1 of the Pennsylvania Constitution and 4) the Board's decision was arbitrary, capricious and an abuse of discretion.

Section 9 of the Act provides that:

> § 1909. Exemption from licensure examination
>
> (c) Professional counselors.—The requirements of section 7(f)(4) shall not

---

3. The DSM–IV is the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, which is published by the American Psychiatric Association. Specifically, the 33 questions deal with obsessive-compulsive disorder, bereavement, mental retardation, sexual disorders, nicotine use disorder, eating disorders, personality disorders, pathological gambling, major affective disorder and oppositional defiant disorder.

4. This Court's scope of review of an order of the Board is limited to determining whether constitutional rights were violated, an error of law was committed, or the necessary findings of fact are not supported by substantial evidence. *Staub v. Department of State, State Registration Board for Professional Engineers, Land Surveyors and Geologists,* 710 A.2d 137 (Pa.Cmwlth.1998), *petitions for allowance of appeal denied,* 556 Pa. 716, 729 A.2d 1133 (1998); 557 Pa. 657, 734 A.2d 863 (1999).

apply and a license shall be issued without examination to an applicant who meets all of the following requirements:

...

(3) Can demonstrate proof of practice of professional counseling for at least five of the seven years immediately prior to the date of application for license.

...

(5) *Can demonstrate holding a current professional certification in professional counseling and having passed a national certification examination in professional counseling administered by a nationally recognized credentialing agency approved by the board.*

63 P.S. § 1909 (emphasis added). In addition, Section 3 of the Act sets forth that the "practice of professional counseling"

Includes, *to the extent compatible with a practitioner's education and professional competence,* all of the following:

(1) *The application of principles and practices of counseling, mental health and human development to evaluate and facilitate human growth and adjustment throughout the life span and to prevent and treat mental, emotional or behavioral disorders and associated stresses which interfere with mental health and normal human growth and development.*

(2) *The evaluation and assessment of normal and abnormal mental, emotional, social, educational, vocational, family and behavioral functioning throughout the life span; individual, group, family counseling and psychotherapy;*

*crisis intervention, career counseling and educational and vocational counseling; functional assessment of persons with disabilities; and professional consulting.*

(3) Professional counselors' utilization of verbal and nonverbal approaches and specialization in the use of arts-based therapeutic approaches, such as art, dance, music or drama, to accomplish treatment objectives.

63 P.S. § 1903 (emphasis added).[5] Furthermore, Section 2 sets forth the Legislative intent of the Act.

## § 1902. Legislative intent

The practice of social work, marriage and family therapy and *professional counseling* within this Commonwealth is *hereby declared to affect the public safety and welfare and to be subject to regulation and control in the public interest to protect the public* from unprofessional, improper, unauthorized and unqualified practice of licensed social work, licensed marriage and family therapy and licensed professional counseling. This act regulates only those who hold themselves out as licensed social workers, licensed clinical social workers, licensed marriage and family therapists or as licensed professional counselors. Acquisition of a license under this act shall not be made a condition of the employment of a person by the Commonwealth or any of its political subdivisions or by nonprofit agencies.

63 P.S. § 1902 (emphasis added).

We also note that the Board receives its power to grant exemption from licensure

---

**5.** We also note that, pursuant to Section 16.3 of the Act, added by Section 4 of the Act of December 21, 1998, P.L. 1017, 63 P.S. § 1916.3, "[o]nly individuals who have received licenses as licensed professional counselors under this act may style themselves as licensed professional counselors and use the letters "L.P.C." in connection with their names. It shall be unlawful for an individual to style oneself as a licensed professional counselor or use any words or symbols indicating or tending to indicate that the individual is a licensed professional counselor without holding a license in good standing under this act."

requirements from Section 6(6) of the Act, 63 P.S. § 1906, which provides that the Board has the power "[t]o waive examination and grant a license in cases deemed exceptional by the board and in accordance with regulations promulgated by the board."[6] Petitioner wishes to be added to the list of approved counselor organizations so as to allow its members, who have already taken and passed Petitioner's own examination, to receive a Pennsylvania Professional Counselor license without having to take another examination.

First, we address Petitioner's argument that because the Act provides no standards for Board approval of a national certification examination, it is an unconstitutional delegation of Legislative power in violation of Article II, Section 1 of the Pennsylvania Constitution, which provides that:

> The legislative power of this Commonwealth shall be vested in a General Assembly, which shall consist of a Senate and a House of Representatives.

With regard to Article II, Section 1, our Supreme Court has previously stated that:

> It is axiomatic that the Legislature cannot constitutionally delegate the power to make law to any other branch of government or to any other body or authority. *State Board of Chiropractic Examiners v. Life Fellowship of Pennsylvania,* 441 Pa. 293, 297, 272 A.2d 478, 480 (1971). It may, however, "confer authority and discretion in connection with the execution of the law; it may establish primary standards and impose upon others the duty to carry out the declared legislative policy in accordance with the general provisions of the act." *Belovsky v. Redevelopment Authority,* 357 Pa. 329, 342, 54 A.2d 277, 284 (1947). The principal limitations on this power are twofold: **(1) the basic policy choices must be made by the Legislature,** *William Penn Parking Garage, Inc. v. City of Pittsburgh,* 464 Pa. 168,

6. In accordance with this Section, the Board promulgated the following regulation which sets forth the Exemption List:

§ 49.15. **Exemption from licensure examination.**

. . .

A license will be issued without examination to an applicant who meets the following requirements. The applicant shall have:

. . .

(6) Demonstrated holding one of the following:

(i) The National Certified Counselor (CC) certification from NBCC and having passed the National Counselor Examination given by the NBCC.

(ii) CRC certification from the CRCC and having passed the CRC Examination given by the CRCC.

(iii) The Registered Art Therapist (ATR) certification from the ATCB and having passed the Board Certification Examination given by the ATCB.

(iv) The Academy of Dance Therapists Registered (ADTR) certification from the ADTA and having passed the National Counselor Examination given by the NBCC.

(v) The Music Therapist–Board Certified certification from CBMT and having passed the Board Certification Examination given by the CBMT.

(vi) The Registered Drama Therapist (RDT) certification from NADT and having passed the National Counselor Examination given by NBCC.

(vii) The Certified Clinical Mental Health Counselor (CCMHC) certification from the Academy of Certified Clinical Mental Health Counselors (ACCMHC) and having passed the credentialing examination given by ACCMHC.

(viii) The Nationally Certified Psychologist (NCP) certification from the NAMP, and having passed the Practice Exam of Psychological Knowledge given by NAMP.

(ix) The Certified Addictions Counselor Credential (CAC) from PCB, and having passed the Advanced Alcohol and Other Drug Abuse Counselor Examination given by the IC & RC/AODA.

(x) The Master's Addictions Counselor Credential from NBCC, and having passed the Examination for Master's Addictions Counselors given by NBCC.

49 Pa.Code § 49.15(6).

212, 346 A.2d 269, 291 (1975); and (2) **the "legislation must contain adequate standards which will guide and restrain the exercise of the delegated administrative functions."** *Chartiers Valley Joint School District v. County Board of School Directors,* 418 Pa. 520, 529, 211 A.2d 487, 493 (1965). This does not mean, however, that all details of administration must be precisely or separately enumerated in the statute. *Chartiers, supra,* at 529, 211 A.2d 487; *see generally Hospital Ass'n of Pennsylvania v. MacLeod,* 487 Pa. 516, 410 A.2d 731 (1980).

*Gilligan v. Pennsylvania Horse Racing Commission,* 492 Pa. 92, 95–96, 422 A.2d 487, 489 (1980) (emphasis added).

In *State Board of Chiropractic Examiners,* which is cited by the *Gilligan* court and relied upon by Petitioner in its brief, the legislation at issue was Section 15 of the Chiropractic Registration Act,[7] which provided that " '[n]o applicant for registration shall be granted a registration for the ensuing license year unless the applicant shall furnish to the board satisfactory evidence that he has attended not less than one two-day educational conference by the Pennsylvania Chiropractic Society, Inc. during the current license year, *or that he has attended an equivalent educational conference during the same period. An equivalent educational conference shall be one approved or ratified by the board as meeting the educational and professional requirements of the profession.' "* (emphasis added). *State Board of Chiropractic Examiners* at 295, 272 A.2d at 479. The Life Fellowship of Pennsylvania, a professional association of chiropractors, applied to the Board for approval of its conference. However, the Board dismissed the Life Fellowship's application. On appeal, the Supreme Court held that Section 15 violated Article II, Section 1 because it violated the non-delegation rule. Specifically, the Court noted that "a statute stating attendance at a conference of a particular chiropractic society will satisfy license and registration standards, without providing any guide or criterion, is an unlawful delegation to that society of the power to determine the requirements, quality and nature of chiropractic continuing education, and is an abrogation by the General Assembly of its constitutional legislative duties." *Id.* at 298, 272 A.2d at 481.

■ In this case, Section 6 delegates to the Board the authority "[t]o waive examination and grant a license in cases deemed exceptional by the board and in accordance with regulations promulgated by the board." The guide or criterion for determining when the examination requirement should be waived is contained in the definition of "professional counseling" itself, as any examination would logically have to test in these areas in order to be acceptable to the Board. Thus, we must conclude that Section 6, in conjunction with Section 9(c)(5), does not delegate authority to the Board in violation of Article II, Section 1.

Second, we will address Petitioner's argument that the Act is unconstitutionally vague in violation of its due process rights. "It is well established that it is fundamental to due process that a statute or regulation must not be so vague as to require persons of ordinary intelligence to guess at its meaning or its possible application." *Schmader ex rel. Schmader v. Warren County School District,* 808 A.2d 596, 599 (Pa.Cmwlth.2002).

---

7. Act of August 10, 1951, P.L. 1182, formerly 63 P.S. § 615, *repealed by* Section 1109 of the Act of December 18, 1986, P.L. 1646.

In *Blanco v. Pennsylvania State Board of Private Licensed Schools,* 718 A.2d 1283 (Pa.Cmwlth.1998), *petition for allowance of appeal denied,* 558 Pa. 633, 737 A.2d 1226 (1999), Blanco was fined by the board for operating a bartending school without a license. On appeal, Blanco argued that the regulation which exempts private tutorial schools from licensure was vague and therefore unconstitutional. In considering Blanco's argument we noted that in *Pennsylvania Builders Association v. Department of Revenue,* 122 Pa.Cmwlth. 493, 552 A.2d 730 (1989), we held that:

> Vague statutes offend the constitution because they may (1) trap the innocent by failing to give a person of ordinary intelligence reasonable opportunity to know what is prohibited so that he may act accordingly; or (2) result in arbitrary and discriminatory enforcement in the absence of explicit guidelines for their application. *William L.,* 477 Pa. 322, 383 A.2d 1228, *cert. denied,* 439 U.S. 880, 99 S.Ct. 216, 58 L.Ed.2d 192 (1978). This court has stated that a legislative enactment will be deemed invalid "only if it is so vague and indefinite that courts are unable to determine with any reasonable degree of certainty the intent of the legislative body or so incomplete, conflicting and inconsistent in its provisions that it cannot be executed." *McCoy v. Lincoln Intermediate Unit No. 12,* 38 Pa.Cmwlth. 29, 36, 391 A.2d 1119, 1123 (1978), *cert. denied,* 441 U.S. 923, 99 S.Ct. 2033, 60 L.Ed.2d 397 (1979). Further, every reasonable presumption in favor of a statute's validity must be made and only if it clearly appears that it cannot be supported can it be held invalid. *Willcox v. Penn Mutual Life Insurance Co.,* 357 Pa. 581, 55 A.2d 521 (1947).

*Id.* at 737. We also stated that "[i]n addition, our Supreme Court noted in *Pennsylvania State Board of Pharmacy v. Cohen,* 448 Pa. 189, 200, 292 A.2d 277, 282 (1972), that 'neither the legislatively chosen agency ... nor the courts may imagine rules or standards for conduct not properly adopted and announced in advance. To hold otherwise is to substitute for either statute or rule a purely subjective criterion which may reflect merely the personal or professional views of individual members of the Board.'" *Blanco,* 718 A.2d at 1285–1286.

Applying the standards set forth above, we held that the regulation was not unconstitutionally vague because it "clearly indicates that a private tutorial school is one that provides individual instruction, including schools in music or dance or individual instruction by a private tutor in other areas. Because there is a regulation defining the term "private tutorial school", Blanco had a reasonable opportunity to know whether the bartending classes he conducted needed to be licensed." *Id.* at 1286. We also held that, based on *Pennsylvania Builders Association,* with the regulation in place the statute was not so vague and indefinite that we were unable to determine with any reasonable degree of certainty the intent of the Legislature or so incomplete, conflicting and inconsistent that its provisions could not be executed. *Id.*

In this case, as in *Blanco,* Petitioner was put on notice as to what was required of it under the Act. Section 3 of the Act defines the practice of professional counseling. Obviously, any organization seeking to be exempt from Pennsylvania's licensing requirements for professional counselors would have to demonstrate that its members are tested in and proficient in these areas to the extent compatible with their education and professional competence. Thus, Petitioner was given a reasonable opportunity to know what was re-

quired of it in order to be placed on the Exemption List. *Pennsylvania Builders Association.* Thus, because the Act is not unconstitutionally vague, we conclude that Petitioner's due process rights were not violated.

■ Third, Petitioner argues that the Board treated its request to be placed on the Exemption List differently from similarly situated organizations, thus depriving it of its right to equal protection under Article I, Section 1 of the Pennsylvania Constitution, which provides that:

> All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness.

■ "When an equal protection claim is presented, this Court must evaluate whether the state has treated with disparity classes of individuals whose situations are arguably indistinguishable." *Allen v. Department of State, Bureau of Professional and Occupational Affairs, State Board of Accountancy,* 141 Pa.Cmwlth. 418, 595 A.2d 771, 773 (1991).

Petitioner argues that the Board approved other specialty exams as national certification exams, including the Registered Art Therapist exam and the Music Therapists exam. Further, Petitioner asserts that there is nothing in the record of this case to suggest that the focus of its exam, with 20% of its questions focusing on co-occurring disorders, was any narrower than the art therapy and/or music exams. Additionally, as the reason for justifying its rejection of Petitioner's examination, the Board stated that a professional counselor must be able to practice all facets of professional counseling. However, Petitioner points out that Section 3 of the Act·specifically recognizes that pro-

fessional counselors are expected to only practice within their specialty because it states that professional counseling "[i]ncludes, to the extent compatible with a practitioner's education and professional competence, all of the following ..." 63 P.S. § 1903.

Furthermore, Petitioner points out in its brief that the Board's rationale for not approving Petitioner's exam, that professional counselors should be able to practice all aspects of professional counseling, is expressly contrary to the published explanation which accompanies its final regulations:

> Miscellaneous Issues
>
> IRRC [The Independent Regulatory Review Commission] commented that the statutory provision in section 2 of the act (63 P.S. § 1920.2) is an important safeguard to make sure licensees only practice in their area of expertise, and questioned why the Board did not include this provision in the amendments to Chapters 47–49. First, this final-form rulemaking only addresses definitions and licensure qualifications. Second, *this is a statutory provision already existing in the act itself,* and licensees must comply with this requirement. Therefore it is unnecessary to include it in the regulations.

32 Pa. Bull. 1197 (emphasis added).

We disagree with Petitioner. Section 3 of the Act, subsections (1) and (2), set forth the various duties of professional counselors, and subsection (3) lists several art-based approaches to professional counseling that the Legislature has chosen to specifically recognize. Although the Act does state that the duties set forth in Section 3 are applicable "to the extent compatible with a practitioner's education and professional competence ...", the Act does also contemplate that all professional

counselors will able to perform a wide range of professional counseling duties. We reach this conclusion because a person who holds a professional counseling license is authorized to practice in *all* these areas. Thus, an examination must test in all these areas. Furthermore, there is no evidence that the Board has treated Petitioner differently than other organizations seeking to be placed on the Exemption List. The use of art, dance and music is the *approach* that is used to counsel and, although the Board has approved the "specialty exams" that use these approaches, there is no evidence that these professionals cannot perform the full range of professional counseling duties set forth in subsections (1) and (2). This Board's approach is not much different than other boards in this Commonwealth which regulate areas such as medicine, law, etc. by examination and first demand that a broad based knowledge in the area be demonstrated before a specialty is selected. Therefore, we must conclude that the Board has not unconstitutionally discriminated against Petitioner.

Fourth, Petitioner contests the merits of the Board's decision. Having already determined that Petitioner's constitutional rights were not violated, we must now determine whether the Board's findings are supported by the evidence and whether the Board committed an error of law. *Staub.*

The Board found that Petitioner's exam is narrowly focused in that it is tailored to test individuals who deal with addictions counseling rather than the entire spectrum of professional counseling. These findings are supported by the evidence, as Petitioner's own evidence indicates that it certifies forensic counselors who work in some aspect of the criminal justice system. Dr. Deisler himself even testified that "we're not interested in the mental health issues. What were are primarily interested in is the criminal offender ..." Furthermore, it is uncontradicted that only 33 out of 160 questions in Petitioner's test deal with co-occurring disorders. Based on these findings, the Board concluded that Petitioner should not be placed on the Exemption List. It is clear from the Board's findings that Petitioner's test does not cover the entire spectrum of professional counseling as that term is defined in Sections 3(1) and (2) of the Act. Professional counseling, on the other hand, covers a wide range of counseling that goes well beyond the scope of forensic counseling. Thus, we hold that the Board did not err as a matter of law in refusing to place Petitioner on its Exemption List.

Accordingly, the order of the Board is affirmed.

### ORDER

AND NOW, January 2, 2003, the order of the Marriage and Family Therapists and Professional Counselors Board docketed at No. 0386–69–02 and dated September 11, 2002 is hereby AFFIRMED.