IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lis Cristina Santamaria Garcia,     :
                Petitioner     :
                :
        v.             :    No. 940 C.D. 2024
                :    Submitted: June 3, 2025
State Board of Social Workers,     :
Marriage and Family Therapists and    :
Professional Counselors,        :
              Respondent    :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
               HONORABLE MICHAEL H. WOJCIK, Judge (P.)
               HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
PRESIDENT JUDGE COHN JUBELIRER       FILED: August 27, 2025

Lis Cristina Santamaria Garcia (Petitioner), proceeding pro se, petitions for review of the June 24, 2024 Final Adjudication and Order issued by the State Board of Social Workers, Marriage and Family Therapists and Professional Counselors (Board) that denied, without prejudice, Petitioner's application by examination for a license to practice as a marriage and family therapist (Application). The Board concluded Petitioner had not satisfied the statutory and regulatory educational requirements to be licensed as a marriage and family therapist. On appeal, Petitioner argues the Board erred and/or abused its discretion in concluding that her education, which occurred in Venezuela, was insufficient, and it failed to provide her with a fair opportunity to obtain a license by imposing costly requirements that are not

imposed on other applicants and delaying its decision. Upon careful review, we affirm.

## I. BACKGROUND

Petitioner filed the Application and supporting materials in December 2021, which the Board provisionally denied on February 16, 2022, due to Petitioner not meeting the educational requirements for the requested license. Petitioner appealed and requested a hearing, which was held on September 6, 2022. Petitioner, acting pro se, testified and presented a package of documents to demonstrate that she met the educational requirements. Those documents included Petitioner's educational records from various universities in Venezuela in their original Spanish, English translations of those records with translator certificates, articles about a humanitarian crisis in Venezuela, records from continuing education programs completed in Pennsylvania, and letters from Petitioner's current supervisor and some of Petitioner's university professors. The Board accepted these documents and held the record open for the deposition of a translator (Translator) who would review the English translations provided by Petitioner to confirm their accuracy, which was filed on March 30, 2023. Translator concluded there were no material misrepresentations in the provided translations and any inconsistencies did not substantively alter the translation's meaning. (Final Adjudication and Order (Final Adjudication), Finding of Fact (FOF) ¶¶ 17-18.)

Based on the evidence presented, the Board made the following findings of fact. In 2009, Petitioner obtained a licentiate degree in psychology in Venezuela, which is "the equivalent of a United States undergraduate degree." (*Id.* ¶¶ 5, 19.) Petitioner obtained a license to practice as a clinical psychologist in Venezuela. (*Id.* ¶ 14.) Petitioner began graduate work in clinical psychology at the Central

2

University of Venezuela in the Spring of 2011 and completed 39 credit hours in graduate studies in that program. (*Id.* ¶¶ 6, 10.) Although the Board's Finding of Fact 11 states that Petitioner "was granted a master's degree in psychology in Venezuela," (*id.* ¶ 11), the Board clarifies in its appellate brief that this finding contained a typographical error and was intended to say Petitioner was "not" granted a master's degree. (Board's Brief (Br.) at 13-14 (citing Petitioner's Ex. E).) Petitioner received a master of arts in human rights in 2017. (FOF ¶ 7.)

Petitioner sought to use courses from her licentiate degree, which is an undergraduate degree, to satisfy some of the specific graduate course work requirements set forth Section 48.2 of the Board's regulations (Regulations), 49 Pa. Code § 48.2, specifically, coursework in human development, marriage and family studies, and marriage and family therapy. (FOF ¶ 8.) Petitioner had 704 practicum hours in graduate psychology coursework that "included 300 hours of supervised direct client contact." (*Id.* ¶ 9.) Ultimately, the Board found that Petitioner had completed one of the three graduate courses in human development and none of the graduate courses in "[m]arriage and family studies, [m]arriage and family and [p]rofessional studies." (*Id.* ¶¶ 12-13.)

The Board held that to obtain a license as a marriage and family therapist pursuant to Section 7(e) of the Social Workers, Marriage and Family Therapists and Professional Counselors Act (Act), 63 P.S. § 1907(e),[1] and Section 48.13 of the Regulations, an applicant is required to successfully complete at least 60 semester credits of graduate work that is closely related to marriage and family therapy, including a 48 semester-credit master's degree in marriage and family therapy or in a closely related field as defined by the Regulations. (Final Adjudication at 6.)

---

[1] Act of July 9, 1987, P.L. 220, *as amended*.

3

Comparing Petitioner's coursework to the statutory and regulatory requirements, the Board concluded that Petitioner had not met the educational requirements for licensure required by Sections 48.2 and 48.13 of the Regulations, and it was not authorized to issue a license to Petitioner. (Final Adjudication, Conclusions of Law ¶¶ 3-4.) Petitioner now petitions this Court for review.

## II. DISCUSSION

### A. Legal Standards

When reviewing a licensing board's decision, our review is limited to whether the necessary findings of fact are supported by substantial record evidence or whether an error of law or an abuse of discretion was committed. *LaStella v. Bureau of Pro. & Occupational Affs., State Bd. of Psych.*, 954 A.2d 769, 772 n.2 (Pa. Cmwlth. 2008). When an agency's decision is based on the exercise of its discretion, that decision may not be reversed absent an "abuse of discretion or a purely arbitrary execution of the agency's duties or functions." *Blumenschein v. Hous. Auth. of Pittsburgh*, 109 A.2d 331, 335 (Pa. 1954). "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused . . . ." *Kyu Son Yi v. State Bd. of Veterinary Med.*, 960 A.2d 864, 878 (Pa. Cmwlth. 2008) (citation omitted). "An abuse of discretion is different from an error of law." *Id.* at 879.

The appellate court "may not reweigh the evidence presented or judge the credibility of witnesses." *Tandon v. State Bd. of Med.*, 705 A.2d 1338, 1342-43 (Pa. Cmwlth. 1997). "[A]s the ultimate finder of fact, the [B]oard may accept or reject the testimony of any witness in whole or in part, and this [C]ourt is bound by the

4

credibility determinations made by the [B]oard." *Id.* Additionally, an agency's interpretation of the law it is charged to enforce is entitled to great deference and will be reversed only if clearly erroneous. *Alpha Auto Sales, Inc. v. Dep't of State, Bureau of Pro. & Occupational Affs.*, 644 A.2d 153, 155 (Pa. 1994). Our "courts have long recognized that administrative boards, comprised of members of the profession they oversee, may base their decisions on the collective expertise of those members." *Batoff v. State Bd. of Psych.*, 750 A.2d 835, 840 (Pa. 2000). That the court may have reached a different conclusion is not a basis for reversing the Board's decision. *Id.* at 841. In other words, judicial discretion may not be substituted for administrative discretion. *Blair v. Bureau of Pro. & Occupational Affs., State Bd. of Nursing*, 72 A.3d 742 (Pa. Cmwlth. 2013).

To become licensed as a marriage and family therapist, an applicant must complete 60 credit hours, including a 48 semester-credit master's degree in marriage and family therapy or a field closely related to marriage and family therapy. 63 P.S. § 1907(e); 49 Pa. Code § 48.13(a)(3)(ii)(B).[2] Section 48.2 of the Regulations defines

---

[2] Section 7(e)(2)(ii) of the Act provides, in relevant part:

**(e) Marriage and family therapist license.**--An applicant shall be qualified to hold oneself out as a licensed marriage and family therapist if the applicant submits proof satisfactory to the [B]oard that all of the following apply:
. . . .
(2) The applicant has successfully met one of the following educational requirements:

(ii) Has successfully completed a planned program of 60 semester hours . . . of graduate coursework which is closely related to marriage and family therapy, including a 48-semester-hour . . . master's degree in marriage and family therapy from an accredited educational institution or a 48-semester-hour . . . master's degree in a field determined by the [B]oard by regulation to be closely related to the practice of marriage and family therapy from an accredited educational institution, with graduate level coursework in marriage and family therapy acceptable to the

**(Footnote continued on next page…)**

5

the specific educational coursework that must be completed to qualify for a license in marriage and family therapy. 49 Pa. Code § 48.2. Section 48.1 defines the fields that are "closely related" to the practice of marriage and family therapy as "[i]nclud[ing] the fields of social work, psychology, counseling, child development and family studies, medicine, nursing, pastoral counseling, ministry, theology, education and sociology." 49 Pa. Code § 48.1.

*B. Whether the Board Made Inconsistent Findings in its Final Adjudication.*

Petitioner first argues the Board's Final Adjudication is inconsistent because it finds both that Petitioner received a graduate degree in clinical psychology, Finding of Fact 11, and that she did not receive that degree, (Final Adjudication at 8-9). The Board responds that Finding of Fact 11 contains a typographical error and, if not, is not supported by the record and should be disregarded.

An examination of Finding of Fact 11 shows that it cites Petitioner's exhibit E as support, (Certified Record (C.R.) at 181-89[3]). Exhibit E contains records related

---

[B]oard from an accredited educational institution or from a program recognized by a national accrediting agency.

63 P.S. § 1907(e)(2)(ii). Section 48.13(a)(3)(ii)(B) of the Regulations similarly requires, in pertinent part, that:

(a) *Conditions for licensure.* To be issued a license to hold oneself out as a licensed MFT, an applicant shall provide proof satisfactory to the Board, that the applicant has met the following conditions:
. . . .
(3) Successfully met one of the following educational requirements:
. . . .
(B) A 48 semester hour . . . master's degree in a field closely related to the practice of marriage and family therapy . . . .

49 Pa. Code § 48.13(a)(3)(ii)(B).

[3] The Court uses the electronic pagination for the Certified Record, which is not otherwise paginated.

to Petitioner's **licentiate** degree in psychology, not to any graduate degree in clinical psychology. This, when combined with the Board's finding that a licentiate degree is the equivalent of an undergraduate degree and the **lack** of any **evidence** in **this record** demonstrating that Petitioner **received** a **graduate** degree in clinical psychology,[4] supports the conclusion that Finding of Fact 11 contains a typographical error and is missing the word "not." Were it not a typographical error, Finding of Fact 11 would have to be disregarded as not being supported by substantial evidence. Thus, this is not a reason to reverse the Board's Order.

*C. Whether the Board's Findings and Conclusions that Petitioner Did Not Meet the Educational Requirements are Supported by the Record and Without Legal Error.*

Petitioner next argues the Board erred or abused its discretion in finding that she did not meet the educational requirements under the Act and Regulations. Petitioner contends the Board erred when it found that her licentiate degree is an undergraduate degree, which is inconsistent with Translator's testimony and the availability of five-year accelerated graduate programs at universities in the United States, and, therefore, the courses associated with that degree should be considered as being graduate coursework. According to Petitioner, the Board's decision fails to provide a culturally competent consideration of her education and the humanitarian crisis occurring in Venezuela, which affected her ability to complete her graduate degree in clinical psychology. Petitioner presented a transcript of her graduate

---

[4] Petitioner attaches some documents to her brief that indicate otherwise, but those documents were not presented at the hearing. Therefore, they are not part of the record certified to this Court and cannot be considered. *See Brown v. Unemployment Comp. Bd. of Rev.*, 276 A.3d 322, 331 n.13 (Pa. Cmwlth. 2022) ("It is well settled that this Court may not consider extra-record evidence that is not part of the certified record on appeal.") It appears that Petitioner has since filed additional applications for licensure that are pending before the Board. (Board's Br. at 14-15.)

coursework in clinical psychology, a closely related field to marriage and family therapy, at the hearing, and all she had to do was complete her dissertation to be awarded that degree, which had occurred by the time the Board deliberated on her Application. Petitioner finally asserts that the Board should have accepted her master's degree in human rights policy and practice as a degree in a closely related field to marriage and family therapy.

The Board responds its findings and conclusions are supported by substantial evidence and reflect the proper exercise of its expertise and discretion. Specifically, the record supports the finding that Petitioner's licentiate degree is an undergraduate degree and, therefore, the coursework associated with that degree cannot be considered for purposes of the Application. According to the Board, any evidence or assertion that Petitioner was, ultimately, awarded a graduate degree in clinical psychology is not a part of this record, but was presented to the Board in different proceedings on different applications filed by Petitioner, which are under consideration. The Board also maintains there was no abuse of its discretion in finding that Petitioner's master's degree in human rights policy and practice was not a closely related field, noting the coursework for that degree met very few of the educational requirements of 49 Pa. Code § 48.2 and has no relationship to counseling couples or families, as do the other closely related fields. The Board claims it must follow the Regulations and apply them to all applicants equally to ensure that all licensed practitioners have the requisite education, which is what the Board did here. The Board asserts that, even if this degree was in a closely related field, Petitioner still lacked the requisite number of credits needed as Petitioner earned only 44 semester-credit hours and 48 are required by 49 Pa. Code § 48.13.

8

"Substantial evidence is defined as such relevant evidence which a reasonable mind might accept as adequate to support a conclusion." *Morris v. State Bd. of Psychology*, 697 A.2d 1034, 1037 (Pa. Cmwlth. 1987). "In performing a substantial evidence analysis, this [C]ourt must view the evidence in a light most favorable to the party who prevailed before the factfinder." *Waldameer Park, Inc. v. Workers' Comp. Appeal Bd. (Morrison)*, 819 A.2d 164, 168 (Pa. Cmwlth. 2003). That a record contains evidence that might support a different factual finding is of no moment. *W. Penn Allegheny Health Sys., Inc. v. Workers' Comp. Appeal Bd. (Cochenour)*, 251 A.3d 467, 475 (Pa. Cmwlth. 2021).

The Board found that Petitioner's licentiate degree in psychology was the equivalent of an undergraduate degree in the United States. Examining the record in the light most favorable to the prevailing party, there is substantial evidence that supports this finding. The materials Petitioner submitted to the Board, both with the Application and at the hearing, identify Petitioner's licentiate degree as "the equivalent of a Bachelor of Arts degree in Psychology," an undergraduate degree, or a bachelor's degree in psychology. (C.R. at 13, 272.) Petitioner's own curriculum vitae describes that degree as a "B.A., B.S.," and she testified that there is no degree in psychology below a licentiate and most of the coursework she relied upon for the Application was taken obtaining that degree. (*Id.* at 20, 107, 109-10, 375.) Because a reasonable mind could accept this evidence as adequate to support the Board's finding, that finding is supported by substantial evidence. *Morris*, 697 A.2d at 1037.

Petitioner asserts that the existence of five-year accelerated graduate degrees in psychology in the United States, the fact that she had been awarded her master's degree in clinical psychology by the time the Board deliberated on her Application, and Translator's testimony support the opposite conclusion. To support the first two

9

assertions, Petitioner relies on materials that were not introduced at the hearing on this Application. These materials are not in the Certified Record and, therefore, cannot be considered in this appeal. *See Brown v. Unemployment Comp. Bd. of Rev.*, 276 A.3d 322, 331 n.13 (Pa. Cmwlth. 2022) ("It is well settled that this Court may not consider extra-record evidence that is not part of the certified record on appeal.") As the Board notes in its brief, evidence of Petitioner's receipt of a master's degree in clinical psychology has been presented, and is being considered, in separate application proceedings.

Petitioner also relies on Translator's testimony, asserting he testified that the education systems in the United States and Venezuela are different, there is no direct English translation for a licentiate degree, a licentiate degree takes five years to complete, and a master's degree may or may not take the same amount of time. (Petitioner's Br. at 24 (citing C.R. at 399-401).) However, Translator also explained that a licentiate degree was an undergraduate degree, even if it took the same amount of time as a master's degree. (*Id.* at 400-01.) Translator's explanation provides additional support for the Board's finding. Even if Translator's testimony supported a different factual finding, this does not undermine the Board's contrary finding as the latter is supported by substantial evidence. *W. Penn Allegheny Health Sys., Inc.*, 251 A.3d at 475.

Because Petitioner's licentiate degree is an undergraduate degree and there is no record evidence that Petitioner was awarded a diploma for her master's degree in clinical psychology, none of the coursework related to those degrees can be considered in determining whether Petitioner has met the educational requirements of Section 7(e) of the Act and 49 Pa. Code §§ 48.2 and 48.13. This leaves Petitioner's master's degree in human rights policy and practice, which the Board

10

found was not a closely related field to marriage and family therapy. In reaching this conclusion, the Board reasoned that the human rights master's degree is not included in the list in 49 Pa. Code § 48.13, and the degree's "coursework was almost completely deficient in relation to the educational requirements at 49 Pa. Code § 48.2." (Final Adjudication at 7-8.) The Board contends the lack of overlapping educational requirements reflects that the two degrees are not closely related because the human rights degree does not have a focus on counseling couples and families and to read it as such would be too broad a reading of the Regulation. (Board's Br. at 12, 16-17.)

The Board's Final Adjudication on this issue reflects an exercise of its discretion and its interpretation of the Act and the Regulations, which it is charged with enforcing. Upon review, that interpretation, based on the Board's expertise, is not clearly erroneous and, therefore, is entitled to deference from this Court. *Batoff*, 750 A.2d at 840; *Alpha Auto Sales, Inc.*, 644 A.2d at 155. Nor can we say that the Board abused its discretion in denying the Application where its necessary findings of fact are supported by substantial evidence and its interpretation of the Act and Regulations is not clearly erroneous. This does not reflect arbitrary action or the manifestly unreasonable exercise of the Board's judgment, and the record contains no evidence of prejudice, partiality, ill will, or bias toward Petitioner. *Blumenschein*, 109 A.2d at 335; *Yi*, 960 A.2d at 878. The Board acknowledged the difficulties of Petitioner's situation, (Final Adjudication at 9), but it is bound, as is this Court, by the requirements of the Act and Regulations for the licensure of marriage and family therapists, which, at the times relevant to the Final Adjudication, Petitioner had not met.

11

*D. Whether the Board Violated Petitioner's Rights.*

Petitioner finally argues the Board violated her rights because the process was far more expensive for her than other applicants to apply for the license and the Board took longer to issue its decision than for other applicants, which affected her ability to obtain raises and seek out job opportunities. Petitioner also asserts the Board failed to provide her with transcripts until after she filed her petition for review, and even then, the transcripts contain some mistakes. Petitioner further maintains she was not aware the record would close following the Board's receipt of Translator's deposition. Petitioner also points to the multiple changes in Board counsel and Board members during the time her Application was pending, which she believes "may have worked in prejudice [sic] [in her] decision." (Petitioner's Br. at 15-16.)

The Board acknowledges the less than "ideal" duration of this matter but asserts that Petitioner was treated like any other applicant in its review of her Application. (Board's Br. at 19.) It observes that Petitioner's education in Venezuela created different obstacles in reviewing the Application, and the Board carefully examined those records under the Regulations' standards, which apply to all applicants, even those with degrees from other countries. Although the Board empathized with Petitioner's history, (Final Adjudication at 9), it is duty-bound to ensure that all licensees can competently practice, and Petitioner points to no place in the record where the Board acted prejudicially against her, her education, or country of origin. The Board contends Petitioner had the opportunity to present documentary and testimonial evidence and cross-examine witnesses, and was advised that the record would close after Translator's deposition was submitted at a meeting that Petitioner could attend; therefore, there was no violation of her rights.

Petitioner asserts several ways she believes the Board violated her rights in reviewing the Application but, upon review of the record, the Court is unpersuaded that these cited reasons require reversal of the Final Adjudication, which is otherwise supported by the record and the law. Petitioner does not specifically cite what rights of hers were violated, but it appears she is invoking the rights to due process and equal protection of the law. Procedural due process requires, in general, "adequate notice, an opportunity to be heard and an opportunity to defend oneself before a fair and impartial tribunal that possessed jurisdiction in the matter." *Bhattacharjee v. Dep't of State*, 808 A.2d 280, 285 (Pa. Cmwlth. 2002). "The essence of an equal protection claim is that persons in similar circumstances must be treated similarly." *Diop v. Bureau of Pro. & Occupational Affs.*, 272 A.3d 548, 565 (Pa. Cmwlth. 2022) (quoting *Burns v. Pub. Sch. Emps. Ret. Bd.*, 853 A.2d 1146, 1152 (Pa. Cmwlth. 2004)) (alteration added). We address Petitioner's arguments in turn.

First, Petitioner challenges the cost of the process, but the increased costs associated with Petitioner's Application were due to the need to obtain, ship, and translate the educational records she wanted the Board to consider in reviewing her Application. Absent such translated records, the Board would have been unable to consider the Application at all. "When an equal protection claim is presented, this Court must evaluate whether the state has treated with disparity classes of individuals whose **situations are arguably indistinguishable**." *Nat'l Ass'n of Forensic Counselors v. State Bd. of Social Workers, Marriage & Fam. Therapists & Pro. Counselors*, 814 A.2d 815, 824 (Pa. Cmwlth. 2003) (quoting *Allen v. Dep't of State, Bureau of Pro. & Occupational Affs., State Bd. of Acct.*, 595 A.2d 771, 773 (Pa. Cmwlth. 1991)) (emphasis added). Although Petitioner paid more for her Application than other applicants, Petitioner is not similarly situated to, and her

situation is not indistinguishable from, those applicants who do not need their educational records shipped and translated. Thus, we cannot say that the additional cost to Petitioner violated her right to equal protection.

Second, Petitioner's contention regarding the length of time it took the Board to consider the Application also appears to be based on equal protection as she argues it took far longer for her than for other applicants. Petitioner filed the Application on December 16, 2021, which was preliminarily denied two months later on February 16, 2022. A hearing was scheduled for April 26, 2022, which was continued at Petitioner's request in order to provide a certified interpreter and twice rescheduled to, finally, September 6, 2022. (C.R. at 28-37.) The Board concluded it needed to confirm the veracity of Petitioner's translator's work, and its counsel indicated that its decision would be based on when it received the transcripts from both the September hearing and Translator's deposition. (*Id.* at 132-35.) Translator's deposition did not occur until February 23, 2023, and the Board did not receive the transcript from Translator's deposition until March 30, 2023, at which time the record was closed. (*Id.* at 404; Final Adjudication at 1.) The Board issued its Final Adjudication on June 24, 2024. The delay in the Board's issuance of the Final Adjudication is troubling, but the Board indicates that Petitioner's educational background created difficulties in reviewing the Application. Further, the Court notes the Application was denied on its merits, based on the evidence in the record, rather than because the Application had "expired," a possibility that the parties acknowledged during the September 2022 hearing, (C.R. at 134), such that it was not the passage of time (delay) that was the cause of the Application's denial. While the Court cautions against such delays in the future, there is no indication that Petitioner was treated differently than any similarly situated person, i.e., whose

14

situation is arguably indistinguishable from Petitioner's situation, *National Association of Forensic Counselors*, 814 A.2d at 824, in this matter.

Third, Petitioner challenges the delay in her receiving the transcripts. The record reflects that Petitioner was advised that she could purchase the transcripts once they were available, (C.R. at 133-35), and Petitioner indicates that when she was told of the cost of the transcripts, after several requests, that amount was too much, (Petitioner's Brief at 17). Petitioner ultimately received the transcripts, it appears without cost, in October 2024. (*Id.* at 17.) While Petitioner may not have received the requested transcripts from the hearing and Translator's deposition prior to filing her petition for review, she did receive them prior to her filing her appellate brief. Petitioner, therefore, had the transcripts in time to have a meaningful opportunity to rely on them to present her arguments to this Court, consistent with due process. To the extent Petitioner asserts the hearing transcript reflects some errors due to the transcriptionist being unfamiliar with Petitioner's accent, the examples cited in her brief were minor and not relied upon by the Board in rendering the Final Adjudication. (*Id.* at 18-19.) Accordingly, Petitioner has not established that her due process rights were violated in these claims.

Fourth, Petitioner's contention that she was unaware of when the record was closed is not supported by the record. Reviewing the hearing transcript, the Board's counsel advised the parties during the September 6, 2022 hearing that there would be an October 2022 meeting for the purpose of discussing additional information regarding the accuracy of Petitioner's translation of the educational records, after which the matter would be closed, except for the filing of optional briefs to the Board. (C.R. at 132-35.) That the Board would make its decision following receipt of the transcript of Translator's deposition was reiterated during that February 23,

15

2023 deposition. (*Id.* at 401-02.) The Final Adjudication indicates the record closed on March 30, 2023, following its receipt of Translator's deposition, the last of the parties' evidence to be offered relevant to this Application. By the time Petitioner claims to have had evidence of receiving the diploma for her master's degree in clinical psychology, the record had been closed for almost three months. (*See* Petitioner's Br. at 20 (stating she provided proof to the Board in May and June 2024 that she had received her diploma in June 2023).) Thus, we discern no violation of Petitioner's rights under these circumstances.

Finally, Petitioner's arguments based on the change of the Board's membership and counsel are unpersuasive. "[I]t is well settled that due process is satisfied if the hearing is held before one member of an administrative body, provided that the other members review the testimony before an adjudication is rendered." *Ullo v. State Bd. of Nurse Exam'r*, 398 A.2d 764, 767 (Pa. Cmwlth. 1979). Petitioner's brief acknowledges that five of the seven board members who participated in the June 11, 2024 meeting, deliberating the Application, were also present at the September 6, 2022 hearing. (Petitioner's Br. at 15-16.) That two of the members may not have been at the hearing does not mean Petitioner's rights were violated where there is no indication that they did not review and consider the evidence. *Ullo*, 398 A.2d at 767; *see also McCarl v. State Bd. of Nurse Exam'r*, 396 A.2d 866, 868 (Pa. Cmwlth. 1979) (no violation of due process where the board members who participated in making the ultimate decision reviewed and considered the testimony, even if they did not attend the hearing). We similarly discern no violation of Petitioner's rights arising from the changes in Board counsel, which, while inconvenient, did not prevent Petitioner from having a meaningful opportunity to present her case to the Board or, ultimately, this Court on appeal.

16

## III. CONCLUSION

For the foregoing reasons, the Court affirms the Board's June 24, 2024 Order.

_____
RENÉE COHN JUBELIRER, President Judge

17

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lis Cristina Santamaria Garcia,      :
            Petitioner     :
                                :
           v.             :     No. 940 C.D. 2024
                                :
State Board of Social Workers,     :
Marriage and Family Therapists and :
Professional Counselors,         :
            Respondent   :

# **O R D E R**

**NOW**, August 27, 2025, the Order of the State Board of Social Workers, Marriage and Family Therapists and Professional Counselors, entered in the above-captioned matter, is **AFFIRMED**.

_____
RENÉE COHN JUBELIRER, President Judge